### FIRST NAT. BANK OF MOUNDS v. COX.

No. 10172—Opinion Filed July 26, 1921.

(Syllabus.)

**1. Trial—Motion to Direct Verdict—Consideration.**

A motion by the defendant for a directed verdict at the close of the plaintiff's evidence presents to the trial court the question whether, admitting the truth of the evidence which has been given in favor of the plaintiff, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith. Where the evidence is conflicting and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration. and totally disregarded, leaving for consideration that evidence which is favorable to the party against whom the motion is leveled. If upon such consideration, there appears to be sufficient evidence to support a verdict for the plaintiff, it is not error to overrule the motion to direct a verdict for the defendant.

**2. Appeal and Error — Review—Requisites of Instructions—Reversal.**

It is the duty of a trial court to give, upon his own motion, proper instructions substantially covering the issues and the evidence produced at the trial of any cause, and it is fundamental error for it to fail so to do; and when an inconsistent instruction has been given, and after an examination of the entire record this court finds that there is a probability that the giving of said inconsistent instruction has probably resulted in a miscarriage of justice, this court will reverse said cause and grant a new trial.

**3. Appeal and Error—Time for Objection—Variance—Waiver.**

A variance between the pleadings and the evidence at a trial where the question of such variance is not raised at the time of the in troduction of the evidence and exception saved, but is raised for the first time on appeal in the appellate court, will be held in the appellate court to be waived and review of such alleged error will be refused by the appellate court.

**4. Same—Objection to Remarks of Counsel.**

Where remarks of an attorney are objected to and no request made of the trial court to withdraw from the consideration of the jury the objectionable remarks, consideration of the same will be refused by the appellate court on appeal, and the same will be held to have been waived; especially so when the objectionable remarks are voluntarily withdrawn by the attorney making the same.

Error from County Court, Creek County; J. V. Frazier, Judge.

Action by C. D. Cox, a minor, by next friend, A. B. Cox, against the First National Bank of Mounds, for amount of deposit. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Smith & Walker, for plaintiff in error.

W. V. Pryor and C. B. Rockwood, for defendant in error.

ELTING, J. This suit was commenced in the county court of Creek county, state of Oklahoma, on February 24, 1916. At which time a petition was filed by C. D. Cox, a minor, plaintiff, by his next friend, A. B. Cox, against The First National Bank of Mounds, Oklahoma, a corporation, defendant. The petition, omitting the caption, was in words and figures as follows:

"Comes now the plaintiff in the above entitled cause and for his cause of action against the defendant alleges and states:

"That plaintiff, C. D. Cox, is a minor under the age of twenty-one years, and sues by A. B. Cox, his father and next friend.

"That the defendant, the First National Bank of Mounds, is a corporation duly organized and existing under and by virtue of the laws of the United States of America, and

is doing a banking business in the state of Oklahoma, with its principal place of business at Mounds, Oklahoma.

"That on the 31st day of December, 1915, the plaintiff deposited with the defendant, the First National Bank of Mounds, a corporation, the sum of $415.00; that the said defendant accepted and received said money as a deposit in the name of the said plaintiff, C. D. Cox; that the plaintiff has repeatedly since said date made demands on the defendant for the said sum of money due to the plaintiff and the defendant refuses to pay the same or any part thereof, and refuses to pay or honor checks drawn on said defendant for said amount by the said plaintiff: that said money was the property of the said plaintiff at the time it was deposited in the defendant's bank and has ever since been and is now the property of the plaintiff.

"Wherefore, plaintiff prays for judgment against the defendant in the sum of $415.00 and the cost of this action."

To said petition the defendant below filed a demurrer for the reason that the same did not state facts constituting a cause of action. We do not find in the record where said demurrer was ever passed upon by the court. Afterwards the defendant below filed an answer to said petition, which was in words and figures as follows, omitting the caption:

"Comes now the above named defendant and for answer to the petition of the plaintiff herein, denies each and every material allegation therein contained, and specifically denies that the plaintiff ever deposited any money or thing of value in said defendant bank:.

"Wherefore, defendant prays that the plaintiff take nothing by his action"
—and thus the issues in the case were made up by the pleading.

The issue, according to the pleadings, was that the plaintiff below had deposited the money in the bank and had never checked the same out, and that the bank, hence, owed him this money. The defendant below denied specifically that the plaintiff ever deposited any money or thing of value with the defendant bank. The said cause went to trial before a jury of six men .

The minor plaintiff went upon the stand and testified to the deposit of the money with the defendant bank, and that he had not checked the same out, but had attempted to; that payment of his checks was refused and that he had made repeated demands on the bank for the money and the same was refused. The plaintiff rested.

The defendant bank then placed several witnesses on the stand. The substance of the evidence introduced by the bank was

as follows: That the defendant bank had received a check for $415 payable to the Mounds-Buhr Milling Company, given by one Hutchinson and that the same was deposited in the bank by A. B. Cox, next friend and father of minor plaintiff, to his credit, who had endorsed the name of the milling company on the check by himself. That A. B. Cox then gave a check of the same amount to the minor plaintiff, C. D. Cox. That in addition thereto, the minor plaintiff deposited $10 in cash, making $425 deposited at the time. This deposit had been received by one of the clerks of the bank in the absence of the cashier and deposited in the name of the minor plaintiff. That on the same day the cashier came back, called the minor plaintiff and his father to the bank, and they came to the bank with an elder brother of the minor plaintiff, and the cashier told them that this $415 was not their money, that it belonged to the milling company. The cashier wrote out a check covering this $415 and insisted that the minor plaintiff sign the same and that this money be taken from his account and placed to the credit of the milling company. That the minor plaintiff signed the check, and that the money was placed to the credit of the milling company. It further developed that Fitzpatrick, owner of the milling company, was indebted to the bank in the sum of $2,500; that checks of the milling company were coming in and being protested, and at the time this transaction took place Fitzpatrick had left for parts unknown, and that A. B. Cox claimed to have purchased from Fitzpatrick the milling concern.

The plaintiff below, in rebuttal to the evidence of the bank, introduced the evidence of himself, his father, and elder brother. They testified, in substance, that when they went to the bank at the call of the cashier, McGee, the cashier told them that the minor plaintiff must give a check to the milling company whereby this fund could be transferred to the milling company, the proper owner of the money; that they did not own the fund and that he used "cuss-words" and told them that if they didn't do this he would have them arrested for embezzling the money belonging to the milling company. That the boy was frightened to such an extent, by fear of arrest, that he was prevailed upon to sign the check, but did not do so freely, but under fear of arrest. He was corroborated in this statement by his father and elder brother; the contention of the plaintiff being that this constituted menace.

A. B. Cox testified that he had bought the car-load of oats, for which the check had been given, with his own money and that

he owed the boy the money and sought to pay him back.

After the plaintiff had introduced his evidence in rebuttal of the theory of the defendant bank, the cashier was recalled to the witness chair and denied the evidence of the plaintiff, his father, and brother, regarding the threats and menace which it was charged was used against the minor plaintiff to induce him to sign the check.

At the close of tne evidence the court instructed the jury in seven instructions. The only instruction shown in the record that was asked for by the defendant bank was as follows, and the manner of taking exception to the refusal by the court is shown by the recital signed by the attorneys for the defendant:

"Comes now the defendant and moves tne court to instruct the jury to return a verdict in favor of the defendant for the reasons and on the grounds that the evidence of the plaintiff which is uncontradicted shows that he is not entitled to recover or take anything in this action.

"Refused 4-29-18. J. V. Frazier, County Judge.

"Defendant excepts to refusal of charge and exception is allowed before jury retire.

"Smith & Walker, Attys. for Deft."

This is the only exception shown in the record as to exceptions to instructions. None of the instructions given by the court are shown by this record to have been excepted to, either as a whole or as to any particular instruction given by the court. The following is found upon the record:

"Whereupon, argument of counsel for the plaintiff and defendant was made to the jury, and during the course of the argument of Mr. Rockwood, counsel for the defendant made the following objection:

"Mr. Smith: 'The defendant objects to the remarks in the argument of counsel for the plaintiff to the jury wherein he states that Fitzpatrick was brought back here for trial and the cause dismissed against him, for the reason the court distinctly sustained all objections to that testimony when sought to be introduced before this jury, and moves the court to require the jury not to consider it.'

"Mr. Rockwood: 'I withdraw anything that he has objected to.' "

The jury returned a verdict signed by the foreman, in favor of the minor plaintiff in the sum of $415, with the interest from December 31, 1915, to date at 6 per cent., and for costs.

The defendant bank filed a motion for a new trial, which was overruled, and to which

ruling of the court the defendant excepted and gave notice of appeal and prayed an appeal to the Supreme Court, and the same was filed in this court August 19, 1918. Petition in error, in addition to assigning error in overruling motion of defendant for a new trial, assigned as error the errors set forth in the motion for a new trial. The defendant below appears as plaintiff in error in this court, and the plaintiff below appears as defendant in error. We will designate them as they appeared in the court below.

The defendant below, in its brief, assigned seven assignments of error, the first of which was that the court committed error in refusing defendant's motion and request for an instructed verdict for the defendant bank.

We hold that the court committed no error in overruling the motion for an instructed verdict. It is not necessary to cite authorities on this question. The rule is established in this state that a request for an instructed verdict admits all the evidence introduced by the one against whom the motion is directed to be true, and all the reasonable inferences to be drawn therefrom. We have examined the evidence and find that the verdict is reasonably sustained by the evidence. and we hold the judgment not reversible for that reason. See the following authorities:

In Abraham v. Southwest Cotton Oil Co., 69 Oklahoma, 169 Pac. 618, the rule is stated briefly as follows:

"The court may direct a verdict for plaintiff or defendant only where the evidence is undisputed or conclusive in its character" —and to the same effect is Oklahoma Automobile Co. v. Goulding, 73 Oklahoma, 176 Pac. 400.

Under the first assignment of error, the attorneys for the defendant bank discussed, in their brief, what they call a variance between the pleading and the evidence, contending that the same was a material variance. It appears from the record that there was no objections made at the time the evidence was introduced on both sides pertaining to duress and menace, and nothing appears in the record raising the issue of variance. Neither is the same assigned as error in the motion for a new trial. We do not think it was proper to raise such a question for the first time in the brief.

"It is too late, on appeal, to raise, for the first time, questions as to variance, between pleadings and proof." Taylor v. Southerland, 7 Ind. Ter. 666, 104 S. W. 874.

To the same effect is Patterson v. M., K. & T. Ry. Co., 24 Okla. 747, 104 Pac. 31.

In this connection see, also, the following portion of section 56, 2 R. C. L., page 82:

"Variance—A variance between the pleading and proof cannot, as a general rule, be raised for the first time on appeal or writ of error, but, where an affirmative charge is given to find for the plaintiff and a general exception taken, it has been held that the question of variance may be raised on appeal."

Also, the case of Milton v. Haden, 32 Ala. 30, 70 Am. Dec. 523.

We hold that the question of variance is, therefore, waived.

The second assignment of error is that the court committed error in admitting incompetent evidence. The record shows that there was a proper objection and exception to a certain line of questioning of the minor plaintiff. The court permitted him to answer, over the objections of defendant bank, certain questions. They were questions relative to the depositing of the $415 in the bank and as to whether the bank accepted the deposit from the minor plaintiff, and also whether they gave him anything for the check, to which he answered: "No." The effect of these questions and the answers were that the boy was stating conclusions which it was the duty of the jury to draw. The main thing under consideration with the jury was as to whether the bank owed the minor plaintiff anything. We think under the facts in this case and in the light of the inconsistent instruction given by the court, that is hereinafter discussed, that the court's permitting the minor plaintiff to testify to conclusions in this manner may have been prejudicial to the rights of the defendant bank. It was only competent for the minor plaintiff to tell what he did. See, in this connection, the case of Bilby v. Thomas Gin Compress Co., 33 Okla. 254, 124 Pac. 1093. The concluding part of the first paragraph of the syllabus of the cited case reads as follows:

"Held, that the answer to the same if accepted by the jury, amounted in effect to a determination of the specific issues then on trial, and the same were erroneous and prejudicial."

The third assignment of error complained of was an improper statement by the attorney for the plaintiff in his closing argument; assigning that the court committed error in refusing to withdraw the remarks from the jury. The form of the exception to this phase of the trial has been given in the statement of facts. We do not find where the attorney for the defendant bank asked the court to withdraw the remarks from the consideration of the jury. Besides, the attorney for the minor plaintiff voluntarily withdrew the remarks himself after the objection. We, therefore, hold that there is nothing in this contention.

In this connection see section 111, 2 R. C. L. page 139, which reads as follows, to wit:

"Remarks of Counsel.—Improper remarks of counsel must be incorporated into the record in order to be subject to review by the appellate court. Obviously this is a matter which does not become a part of the judgment roll, and must therefore be preserved in the bill of exceptions or its statutory substitute. It is also clear that the mere assigning of such remarks as one of the grounds for a new trial is not sufficient to preserve such matter for review."

We find in this record a faulty and incomplete instruction that the court gave upon the question of duress and menace, which was followed by an inconsistent and inapplicable instruction based upon the issues as joined in the pleadings. The issue joined by the evidence in this case was upon the question of menace. In other words, did the minor plaintiff sign the check transferring the $415 back to the milling company from a sense of duty and right, as contended by the defendant bank, or was he induced to do so under the threats of arrest, as contended by the minor plaintiff? This issue arose from the evidence and was, it is true, an issue at variance with the issue joined with the pleadings, but which, not being objected to, is held waived. It is the duty of the court to give, upon his own motion, a substantially correct and proper instruction of the law as applicable to the facts and issues joined.

Under the common law, duress consisted of two kinds: Duress by imprisonment, and duress by threats, which was technically termed "duress per minas." Duress in this state is defined by statute under two heads: Duress and Menace. Duress, under the statute, was the duress at common law under the head of "Imprisonment" and duress by threats is defined in our statutes under the head of "Menace," and is the same as designated under the common law as "duress per minas." A portion of section 3, 9 R. C. L. 712, reads as follows:

"Classification — Originally the only form of duress recognized by the courts was that of the person, and this was divided into two classes, namely, duress of imprisonment involving an actual loss of liberty, and duress by means of threats, or per minas as it is technically termed, where the hardship is only threatened and impending."

Our statutes on duress are as follows:

" 896. Consent. The consent of the parties to a contract must be: First. Free. Second. Mutual; and, Third. Communicated by each to the others.

"897. Consent not Free May be Rescinded. A consent which is not free, is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by article 5 of this chapter.

"898. When Consent is not Real. An apparent consent is not real or free when obtained through: First. Duress. Second. Menace. Third. Fraud. Fourth. Undue influence; or Fifth. Mistake.

"899. Construction. Consent is deemed to have been obtained through one of the causes mentioned in the last section, only when it would not have been given had such cause not existed.

" 900. Duress Defined. Duress consists in: First. Unlawful confinement of the person of the party, or of husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband or wife. Second. Unlawful detention of the property of any such person; or Third. Confinement of such person, lawful in form, but fraudulently obtained or fraudulently made unjustly, harassing or oppressive.

"901. Menace Defined. Menace consists in a threat: First. Of such duress as is specified in the first and third subdivisions of the last section. Second. Of unlawful and violent injury to the person or property of any such person as is specified in the last section; or, Third. Of injury to the character of any such person."

The trial court, in this cause, undertook in his fourth instruction to define what he calls "duress" in the following language:

"Gentlemen of the jury, you are instructed that duress is a condition that exists where one, by the unlawful act of another, is induced to make a contract or perform or forego some act under circumstances which deprive him of the exercise of free will; a condition of mind produced by improper, external pressure or influence that practically destroys the free agency of a party, and causes him to do an act or make a contract not of his own volition; personal restraint or fear of personal injury or imprisonment; an unlawful restraint, intimidation, or compulsion of another to do or perform some act which he is not legally bound to do, contrary to his will and inclination."

The definition of the court in the above instruction really defines menace under our statutes. The definition of duress under our statutes would not in any way apply to the facts in this case, since there was no imprisonment of the minor plaintiff or any of his relatives; but, according to the

evidence developed by the minor plaintiff, there were threats of imprisonment, and the court should have instructed the jury either in the language of the statute or in the substance of the statute. See case of Britton et al. v. Lombard, 52 Okla. 43, 152 Pac. 590, in which a similar instruction was given to that in the instant case and held not correct.

The instruction given is not clear, and must have been confusing to the jury, especially so when taken in connection with the inconsistent instruction hereinafter discussed.

The fifth instruction given by the court to the jury was as follows:

"Gentlemen of the jury, you are instructed that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence each and every material allegation alleged in the petition.

"If you find from the evidence that the plaintiff in this action on or about December 31, 1915, deposited with the defendant bank, the sum of $415, then you are instructed that the burden of proof is upon the defendant to show that they have paid to the plaintiff said sum of $415."

This instruction, No. 5 given by the court, was entirely inconsistent with the theory of menace. It was an instruction on an issue that had been entirely abandoned by the evidence, and it was improper for the court to give it. We cannot say upon which theory or issue the jury decided the case under the double-barrelled instruction of the court. The jury could have found under the issue of menace and as presented to them by instructions No. 3 and 4, or they could have found their verdict under the issue as pitched by the pleadings and without regard as to the issue as raised by the evidence and as presented to them by the instruction No. 5.

The first and second paragraphs of the syllabus of the case of Bronaugh v. Pratt, 46 Okla. 303, 148 Pac. 1044, reads as follows:

"Where it appears from the entire record and proceedings in the case that a just and proper verdict was returned by the jury, technical errors in the rulings of the court as to the competency of evidence were without prejudice.

"If upon the whole record it is apparent that a correct conclusion was reached, and a just decision rendered, the judgment will not to be disturbed."

The law in the above syllabus lays down the rule that technical errors will be dis-

regarded when, after a review of the whole record, the court concludes that the judgment was correct and just. Technical errors and erroneous instructions will be ignored. It is reasonable to conclude that the converse of this rule is true also: That after a review of the whole record, if there was a probability of a miscarriage of justice, and the court found that there had been erroneous instructions or improper admission of evidence, then the court would reverse the case for such error.

A portion of section 53, page 270, 20 R. C. L., reads as follows:

"Omission or Refusal to Instruct. The failure of the trial court to submit to the jury such issues as are necessary to settle the material controversies, or to state the law applicable to a material issue, such as damages, is ground for a new trial."

Section 54, page 271, 20 R. C. L., reads as follows:

"Objections and Exceptions. An instruction fundamentally wrong, or which has the effect of preventing a verdict for a substantial amount on a cause of action well pleaded and proven, may be assigned as error on a motion for a new trial, even though at the trial the attorney states that he has no exceptions to the charge, but it is otherwise with inaccuracies of expression, failure to instruct on every hypothesis, or inadequate treatment of some phase of the controversy. Under the statutes of some states instructions not excepted to, but which appear from the record to have been given or refused. are open for consideration, on motion for a new trial."

The following is from Snyder v. Stribling, 18 Okla. 168 (89 Pac. 222), quoting from pages 200 to 201:

"Appellate courts should see that causes are tried and justice administered according to the forms and requirements of the law, and not hesitate to set aside the verdict of a jury or reverse the judgment of a court where there has been such a departure from settled forms or requirements as have apparently endangered and prejudiced the rights of any litigant."

This theory is also set out in section 6005, Rev. Laws 1910, which reads as follows:

"Harmless Error. No judgment shall be set aside or new trial granted by an appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence. or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made. after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

We desire, before closing this case. to call attention to the case of Horton v. Early, 39 Okla. 99, 134 Pac. 436, wherein Sharp, Commissioner, lays down the following rule in the 6th paragraph of the syllabus:

"'Where it appears from the evidence that a verdict is so clearly right that, had it been different, the court should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instructions."

In the Early Case the record discloses that on the proper issue involved in that case the evidence was virtually uncontradicted and in support of the verdict of the jury, and, as Commissioner Sharp states, if the jury had found any other verdict, it would have been the duty of the court to set it aside. In the instant case the evidence is in sharp conflict on the issue of menace. While the court, in his third instruction in the instant case, put the issue of menace up to the jury, and wherein he referred to his definition of duress or menace given in his fourth instruction. yet the giving of his instruction No. 5 on the issue raised by the pleadings, in addition to the instruction given on the issue raised by the evidence, presented two inconsistent theories of law to the jury. To repeat, we hold this to be reversible error.

We have examined the evidence in this case and we find that there is a probability that there was a miscarriage of justice in this case. The issues joined by the evidence in this case put a square issue of menace to the jury. Both the plaintiff and defendant were entitled to an instruction plain and direct upon this question. with a definition of menace as laid down in the statutes. given either in the language of the statutes or giving the substance thereof. They were entitled to this without having any other issue injected into the case as was done in the instant case by giving of instruction No. 5. It was not a question of whether the money had been deposited by the minor plaintiff in the bank; that is not disputed; but it was a question of whether the minor plaintiff had transferred the money to the account of the milling company from a sense of right and duty and as a free agent at the request of the cashier of the bank and as contended by the defendant bank to have been the truth, or whether he transferred it under threats. of imprisonment and he acted under fear and not as a free agent when he signed the transfer check.

See the following section of the statute heretofore given:

"899. . Construction. Consent is deemed to have been obtained through one of the causes mentioned in the last section, only when it would not have been given had such cause not existed."

For the errors found, this cause is reversed and remanded, with directions for a new trial not inconsistent with the holdings herein.

PITCHFORD, V. C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.