Carroll J. MOODY and Dave Moody, Plaintiffs in Error,

v.

O. C. CHILDERS, Defendant in Error.

No. 38289.

Supreme Court of Oklahoma.

July 28, 1959.

Dissenting Opinion Sept. 22, 1959.

Rehearing Denied Sept. 22, 1959.

Williams, Williams & Williams, Ardmore, for plaintiffs in error.

Harold Springer, Ardmore, for defendant in error.

## PER CURIAM.

The plaintiff alleged that he was a track laborer working for the Gulf, Colorado & Santa Fe Railway Company, riding as a passenger on a certain motor car on the morning of January 10, 1957. That about

8:10 A.M. on said date the motor car on which he was riding was struck by a 1949 Dodge pick-up truck owned by the defendant Carroll J. Moody and being driven by the defendant Dave Moody, at the point where the company's track intersects old highway 19 in Garvin County, Oklahoma. That as a result of the collision he was severely injured. That the damage was due to certain acts of negligence of the company, and by the negligence of the defendants, Carroll J. Moody and Dave Moody.

He further alleged that as a result of the negligence of the defendants and the company, he suffered certain injuries as follows:

1. "Severe shock to both his physical and nervous systems.

2. "Violent and crushing jar to his entire body causing great body weakness and nervousness.

3. "Right colles fractures not properly united.

4. "Comminuted fractures of right 11th and 12th ribs posterially necessitating the application and continually wearing of a corset type brace.

5. "Severe contusion of right shoulder region with bruises over all of his body.

6. "Severe sprain of the right ankle joint with soft tissue damage in this region.

7. "Possible internal injuries.

8. "The pain and suffering are permanent."

He further alleged that at the time of the collision he was 65 years of age, and had no physical disabilities; that he had a life expectancy of 11.55 years, and was earning an annual wage of $3,720. He prays for $66,220 damages.

At the conclusion of the evidence the court instructed the jury to return a verdict in favor of the defendant, Gulf, Colorado & Santa Fe Railway Company. No appeal was taken. The remaining parties will be referred to as they appeared in the trial court.

The separate answer of the defendants consists first of a general denial followed by a plea of contributory negligence in the following particulars:

1. That the plaintiff was operating the motor vehicle upon which he was riding in a careless and negligent manner, as follows:

2. "That he approached the crossing over said railroad at an excessive rate of speed.

3. "That in view of the fact that plaintiff was unable to see the road as he approached the same, that it was his duty to have brought said motor vehicle to a stop before entering said intersection.

4. "That it was the duty of the plaintiff to keep a lookout for persons using said highway and to notify the driver of said motor car of any vehicle using the highway and that the plaintiff failed to perform this duty, but for which the accident and injuries suffered by him would not have occurred.

5. "That the plaintiff, although it was his duty to do so failed to keep a lookout and failed to notify the operator of the motor car of the approach of the car being operated by the defendant, Dave Moody, to said intersection."

The alleged damage, as reflected by the record, was caused by a collision between a motor car being operated on the railway tracks of the company by one C. B. Holder, section foreman, which was occupied by the plaintiff, and a Dodge pick-up truck which was being driven on old highway 19 by Dave Moody, defendant, as an employee of the defendant Carroll J. Moody.

The collision occurred about 1.2 miles east of Pauls Valley, where the railroad track crosses highway 19. The highway runs east and west, and the railroad track runs northeast-southwest, crossing the highway at an angle of about 35 to 40 degrees. At the time of the collision the motor car was traveling from the southwest to the northeast, and the pick-up truck

was being driven from the west to the east. There was no traffic on either the railroad track or the highway. The paving on the highway is blacktop. The weather was cold (14 degrees F.) and dry, with no precipitation. The motor car was seven feet and eight inches long. It weighs about 2000 pounds. There is a bench or seat on each side of the car 28 inches wide and four feet and eight inches long. These seats were occupied by two men on each side, and there are platforms running along each side of the motor car for their feet. On the day in question the foreman, C. B. Holder, was driving the motor car, and he sat on the back of this bench on the rear left side of the car. Next to and in front of him was a 16 gallon water keg, and plaintiff sat in front of the water keg. Two other members of the section gang sat on the right side of the motor car. The car was equipped with a top and windshield, but it had no covering on the sides.

The truck driven by the defendant, Dave Moody, was a Dodge pick-up with an enclosed cab, having a glass windshield and glass in the doors on each side of the cab. He was alone in the pick-up at the time of the accident.

The defendant, Dave Moody, testified he had been driving over the railroad track at the point of the accident for almost thirty years, and that motor cars had stopped for him before, at least one-hundred times as he approached the intersection.

He further testified that on the morning of January 10, 1957 he was driving the pick-up truck on old highway 19 from Pauls Valley to the east, at a speed of 20, or maybe 25 miles per hour. He could bring it to a stop within the assured clear distance ahead. There was no other traffic on the highway. The road was dry. As he approached the railroad crossing he looked to see if a train was approaching. When he got within about five feet of the railroad tracks the motor car on which the plaintiff was riding was driven out in front of him. He did not have time to apply his brakes. He had heard no warning or alarm

that the motor car was approaching the intersection.

All the evidence shows that the right front bumper of the truck collided with about the center of the motor car, but there is a variance as to the point on the highway where the collision occurred. The highway patrolman, Louis Speck, testified that the impact occurred three feet from the edge of the highway. He testified:

"There were two or three different ways to determine the point of impact. The best and most positive way was where the motor car left the rails in a sidewise position, where the flanges on the wheels began to leave marks on the highway."

C. B. Holder testified he was pretty near half way across the road when the collision occurred. The plaintiff testified it was about the center, or maybe a little north of the center. The defendant Dave Moody said it was about three feet north of the south side of the road.

Regardless of where the impact occurred, neither of the parties on the motor car saw the truck, nor did the driver of the truck see the motor car before the impact which knocked the motor car about 45 feet against the railroad warning sign post with the truck resting against it.

The jury returned a verdict in favor of the plaintiff and against the defendants in the amount of $25,000.

The assignments of error by the defendants are presented under the following propositions:

Proposition I.

"Where there is no evidence reasonably tending to show that the defendants were guilty of negligence, it is error for the trial court to submit the case to the jury.

"(a) Were defendants guilty of negligence as to speed?

"(b) Were defendants guilty of negligence in failing to keep a proper lookout?

"(c) Were defendants guilty of actionable negligence in backing the truck off the body of the plaintiff?"

Proposition II.

"Where several grounds of negligence are charged and there is an entire lack of proof of any, it is the duty of the trial court to withdraw such allegations from the consideration of the jury, or by proper instructions, to limit to those allegations of negligence which are supported by the evidence."

Proposition II.

"A motorist on a highway has a right to assume that the operator of a railway motor car will yield the right of way to him, and this is especially true where the rules of the railway company require the operator of such motor car to so yield the right of way and where it has been the custom of the operators of such motor cars at the particular crossing where the collision occurred to yield the right of way without fail for a period of at least thirty years."

Proposition IV.

"The verdict of the jury is excessive."

Whether there was negligence by the defendants that caused the injury that resulted in damages to the plaintiff was a question for the jury to determine, if there was any evidence that the speed he was driving was excessive, taking into consideration all the surrounding facts and circumstances at the time and place where the accident occurred and whether he failed to keep a proper lookout as he approached the crossing prior to running into the side of the motor car. According to the testimony of the defendant, Dave Moody, who was driving the truck at the time of the accident, he knew the railroad track was there and knew there was a crossing sign which was visible to him for some 200 yards distance, but did not notice or see the sign. He stated that the brakes on the truck were in good shape, but evidently they were not applied before he struck the motor car, as no skid marks were made. So under all the facts, reflected by the record, we hold whether the evidence of negligence of the defendants caused the damages was properly submitted to the jury. We are therefore bound by the judgment rendered on the verdict.

In Missouri, Kansas & Texas Railway Company v. Flowers, 187 Okl. 158, 101 P.2d 816, 817, 2nd syllabus, we held:

"The presence of a railroad track, on which a train may at any time pass, is notice of danger to such an extent that it is the duty of a person about to cross the track on a public highway to exercise caution in so doing, and to look and listen before crossing, and it is negligence to omit such ordinary precaution."

See also Missouri Pac. R. Co. v. Merritt, 104 Okl. 77, 230 P. 513.

The defendants make some complaint as to the instructions given by the court and the failure of the court to give their requested instructions. There are well established rules supported by a long line of decisions of this court, holding as follows; Black v. Coleman, 142 Okl. 195, 285 P. 983:

"Instructions of the court should be considered as a whole and in their entirety, and no particular paragraph thereof should be singled out and given an interpretation which some other paragraph shows was not intended to be placed upon it."

United States Fire Ins. Co. v. Whitchurch, 138 Okl. 182, 280 P. 834, 835:

"Instructions should be construed together as a whole. When so construed, if they properly state the law, they will not be subject to exception, although some numbered instruction or portion thereof standing alone may be misleading."

Grayson v. Brown, 166 Okl. 43, 26 P.2d 204:

"Instructions must be considered together, and while instruction standing

alone may be subject to criticism, yet if instructions considered together fairly submit issues to jury, no reversible error exists."

See also Newell v. Musgrove, 129 Okl. 207, 264 P. 156.

After viewing the instructions as a whole we are led to the conclusion that they fairly stated the issues, free from bias or prejudice, and the trial court did not err in giving them to the jury or did not err in refusing to give the requested instructions of the defendants which were in effect an instructed verdict.

■■ The defendants also contend that the amount of the verdict is excessive. In Denco Bus Lines, Inc. v. Hargis, 204 Okl. 339, 229 P.2d 560, we held:

"Verdict of jury in injury action will not be set aside as excessive, unless it appears that verdict is so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous and such as manifestly shows jury to have been actuated by passion, partiality, prejudice or corruption."

The plaintiff testified that he had worked for the railroad company for a period of 14 years and was earning $3,358.20 annually. Further, at this point he testified that since he was injured he had not been able to do any work; that he was hospitalized on seven occasions after the date of the accident on January 10, 1957, through and including a part of October, 1957. On the date of the accident he was carried to Memorial Hospital in Pauls Valley in an ambulance and remained there until January 15, a period of five days, when he was transferred to Santa Fe Hospital at Temple, Texas. He remained there until February 17, 1957, a period of 32 days. He was then in and out of the Santa Fe Hospital on five occasions. He had two different types of back braces applied by orthopedists at the Santa Fe Hospital. Further, he was instructed by the orthopedist to wear the brace continually and followed those instructions carefully.

Dr. Carlock testified:

"A. Do I have an opinion as to this man's disability?

"By the Court: Yes, sir.

"A. As to whether or not he can perform—

"Q. (Interrupting) Perform ordinary manual labor. A. I don't think he is physically fit to perform ordinary manual labor at this time.

"Q. Do you feel that he will ever be able to perform ordinary manual labor? A. No.

"Q. Doctor, has he complained to you of discomfort and pain in these areas of his body that have been brokken? A. Yes.

"Q. Do you feel that he has pain? A. Yes, I think his complaints are justified.

"Q. Do the extent of his injuries justify the pain that he complains of? A. His condition now justifies pain.

"Q. Will that pain and discomfort be permanent? A. To some degree, yes. As long as he lives. These things we have talked about.

"Q. Yes, sir, these things we have talked about, not including this low back thing. A. That's right.

"Q. But his wrist and his ankle and these ribs and this vertebra that is compressed that we talked about. Now, would you say whether or not this man will have to have future medical attention? A. I think he will always wear a back brace to maintain reasonable comfort.

"Q. Yes, sir. A. And he will have to have medical attention."

We therefore hold that the amount of the judgment is sustained by sufficient evidence of injury and disability of the plaintiff.

Judgment affirmed.

DAVISON, C. J., and WELCH, HALLEY, JOHNSON, BLACKBIRD and JACKSON, JJ., concur.

IRWIN and BERRY, JJ., dissent.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

BERRY, Justice (dissenting).

I am unable to agree with the majority opinion.

The basic issues presented by this case are whether Dave Moody was guilty of primary negligence in operating his pickup truck immediately before the collision and whether O. C. Childers was guilty of contributory negligence in failing to exercise reasonable care for his safety immediately before said collision.

In Stillwater Milling Co. v. Templin, 182 Okl. 309, 310, 77 P.2d 732, 734, we had this to say:

"The court, of course, was correct in instructing the jury that the negligence, if any, of the husband was not imputable to the wife. There was no joint enterprise and the agency was not proved. But it does not follow that the court should have determined as a matter of law that she was not guilty of contributory negligence. The case of Hasty v. Pittsburg County R. Co., 112 Okl. 144, 240 P. 1056, 1059, involved injuries to a wife riding in a car driven by her husband. The court rejected the plea of imputed negligence and joint enterprise, but said: *'What, if anything, plaintiff should have done, or omitted to do, in the exercise of reasonable care for her own safety, to prevent her injuries, depended upon the facts and circumstances. Thus the jury, under our Constitution, should have determined whether she was guilty of contributory negligence.'*" (Emphasis supplied.)

The fact that defendants failed to request an instruction on the matter of whether plaintiff was guilty of contributory negligence in the foregoing particulars does not serve to make this case free of reversible error. In the case Roadway Express, Inc. v. Baty, 189 Okl. 180, 182, 114 P.2d 935, 938, we held that "* * * It was the court's duty, on its own motion, to instruct correctly on the issue of contributory negligence. It was a fundamental issue of law involved in the case. § 359, O.S.1931, 12 Okl.St.Ann. § 577, subd. 5; First National Bank of Mounds v. Cox, 83 Okl. 1, 200 P. 238; Liberty National Bank of Weatherford v. Semkoff, 184 Okl. 18, 84 P.2d 438; City of Altus v. Martin, 185 Okl. 446, 94 P.2d 1. * * *"

I am of the opinion that under the facts of this case, the trial court's failure to instruct on the fundamental question of contributory negligence on the part of O. C. Childers prevented the defendants from having the fair and full trial that they are entitled to and for said reason I respectfully dissent from the majority opinion.