**Bradley KAY et al., Plaintiffs-Appellants,**

**v.**

**CESSNA AIRCRAFT COMPANY, a corporation, Defendant-Appellee.**

**Nos. 74–1785, 75–1437.**

United States Court of Appeals, Ninth Circuit.

Feb. 24, 1977.

Rehearing and Rehearing En Banc Denied April 15, 1977.

James J. McCarthy, Magana & Cathcart, Los Angeles, Cal., Ellis J. Horvitz, argued, Encino, Cal., for plaintiffs-appellants.

Rudi M. Brewster, James F. Stiven, argued, Gray, Cary, Ames & Frye, San Diego, Cal., Robert D. Brill, Los Angeles, Cal., for defendant-appellee.

Before CHAMBERS, and CHOY, Circuit Judges, and SPENCER WILLIAMS *, District Judge.

* The Honorable Spencer Williams, United States District Judge for the Northern District of California, sitting by designation.

## OPINION

**SPENCER WILLIAMS, District Judge:**

Julius Kay was killed when his Cessna Skymaster Model 337 airplane crashed during take-off. The 337 is a twin engine aircraft of "push-me/pull-me" design, e. g., having one pulling engine forward of the pilot as in the traditional single engine design and the second pushing engine behind the pilot and totally obscured from his view.

The undisputed evidence shows that the Cessna's rear engine stopped as Kay taxied to the end of the runway after completing his warm-up procedures in the parking lot. It is also not disputed that Kay then sat at the end of the strip for several minutes prior to take-off, and that he attempted his fatal take-off with only the forward engine operating.

With Kay's particular model of airplane, rear engine failure cannot be detected either visually or by a change in the plane's movement. This differs from the conventional twin-engine aircraft where the failure of one engine is accompanied by a sharp and violent turning motion. A thrust warning light to alert the pilot to the fact of rear engine failure had been included in early models of the Cessna 337, but was not installed in later models, such as Kay's, because it proved to be unreliable and sometimes gave false warnings. Cessna's efforts to develop a satisfactory system were unsuccessful.

Kay's widow, surviving children and the estate of Julius Kay submitted their wrongful death claim to the jury on the theory of strict products liability. Jurisdiction is premised on 28 U.S.C. § 1332, diversity of citizenship. California law with regard to products liability is therefore applicable.

Defendant argues that the absence of this warning light does not constitute a "defect" because the Owner's Manual sets forth take-off procedures which, if followed, would clearly reveal that only one engine was functioning. Cessna asserts that decedent's failure to comply with these take-off procedures was a misuse of the aircraft that was not reasonably foreseeable to defendant.

The jury found for the plaintiffs, the trial court granted defendant's subsequent motion for judgment notwithstanding the verdict,[1] and this appeal followed.

A judgment notwithstanding the verdict is proper when the evidence permits only one reasonable conclusion as to the verdict. *Cockrum v. Whitney*, 479 F.2d 84 (9th Cir. 1973). In ruling on a motion for judgment n. o. v. the trial judge cannot reweigh the evidence or consider the credibility of the witnesses. The evidence must be viewed in the light most favorable to the party against whom the judgment would be granted and all inferences must be drawn in that party's favor.

The judgment n. o. v. in this case was properly granted. The case was submitted to the jury on the theory of strict products liability. If a product lacks warnings or instructions as to its proper and safe use and this absence renders the product "defective," its manufacturer is liable for any proximately caused injuries. *Barth v. B. F. Goodrich Tire Co.*, 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (1968); *Harris v. Belton*, 258 Cal.App.2d 595, 65 Cal.Rptr. 808 (1968); *Jackson v. Coast Paint and Lacquer Company*, 499 F.2d 809 (9th Cir. 1974); *see generally* Restatement (Second) of Torts § 402A.

A plaintiff may recover from the manufacturer even if the product is used in a manner not intended by the manufacturer, and therefore unanticipated by warnings or other instructions, *if* the unintended manner of use is reasonably foreseeable to the manufacturer. *Horn v. General Motors Corporation*, 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976).

Plaintiffs' theory of recovery was that Cessna's instructions were inadequate and rendered the aircraft dangerous and were therefore defective. Alternatively, plaintiffs asserted that even if the instructions were adequate, the possibility that pilot

---

1. The order was for a judgment notwithstanding the verdict, or in the alternative a new trial, or in the alternative a mistrial in favor of defendant and against plaintiff.

Kay would fail to comply fully with these instructions was a foreseeable misuse of the aircraft rendering Cessna liable.

Neither of plaintiffs' theories of recovery is supported by the evidence or the reasonable inference which may be drawn from that evidence. First, Cessna provided detailed instructions regarding safety checks to be made before and during take-off. The Owner's Manual sets forth procedures the pilot should follow before take-off which include checks of the throttle settings and the magnetos. The instructions further provide that the pilot should check full-throttle engine operation early in the take-off run.[2] Compliance with these procedures would have alerted the pilot in this case to the rear engine failure and the accompanying danger.

Plaintiffs' evidence does not refute the fact that compliance would have averted the accident. Their evidence only allows an inference that the instructions could have been more clearly drafted; it does not indicate that the instructions were such that compliance therewith would not have prevented the accident.

Second, Kay's failure to follow safe operating procedures was not reasonably foreseeable to the manufacturer. Regardless of whether Kay made pre-flight checks of the plane before taxiing from the parking lot, it is clear from the record that the plane sat on the runway for several minutes *before* take-off and *after* the rear engine failed. Both the Skymaster manual and basic principles of aircraft safety dictate that the pilot be alert at that time for potential problems. The evidence does not indicate that one could reasonably find that a pilot would fail to check his instrument panel

during that period. It is unreasonable to expect Cessna to have anticipated such misuse. Plaintiff's evidence of other accidents caused by engine failure, of the difficulty of seeing the instrument panel, and of the dangers of aborting the take-off are not relevant to the circumstances of this case. No inference can be drawn from this evidence that a pilot will utterly disregard even the most routine safety checks during a two-minute pre-take-off wait at the end of the runway and during the initial phase of the take-off itself.

The only reasonable inference is that Cessna's instructions were adequate to alert the pilot to engine failure before take-off and that Kay's failure to follow the instructions before and during take-off was unforeseeable misuse for which Cessna could not be held liable.

■ In their consolidated appeal, appellants challenge the trial court's denial of their Motion to Set Aside the Judgment Notwithstanding the Verdict. This motion was made on the grounds of newly discovered evidence pursuant to Federal Rule of Civil Procedure 60(b)(2). Such newly discovered evidence consisted of an internal memorandum by W. D. Thompson, defendant's Manager of Flight Test and Aerodynamics written on June 10, 1964. In this memorandum, Thompson criticized the decision to drop the thrust warning lights, stated that the then-existing thrust warning system was inadequate and recommended development of a suitable system.

The ruling of the trial court was proper. The newly discovered evidence was cumulative and did not present additional facts relevant to the trial judge's decision to

---

**2.** The Skymaster Owner's Manual provides the following instructions (set forth in Appellee's Brief, Appendices A and B):
   Pp. 1–2, 1–3:
      BEFORE TAKE–OFF
         (6) Throttle Settings—1800 RPM
         (7) Magnetos—Check (50 RPM maximum differential between magnetos)
      TAKE–OFF
      NORMAL TAKE–OFF
         (2) Power—Full throttle and 2800 RPM
   Pp. 2–10, 2–11:

   TAKE–OFF
      It is important to check full-throttle engine operation early in the take-off run. Any signs of *rough engine operation or sluggish engine acceleration* is good cause for discontinuing the take-off. (emphasis added).
   Check of full throttle engine operation includes viewing the instrument panel. This would indicate a dead engine as well as a rough or sluggish engine and also constitute good cause for discontinuing the take-off.

grant a judgment notwithstanding the verdict.

The Judgment Notwithstanding the Verdict is affirmed.

The denial of the motion to Set Aside the Judgment Notwithstanding the Verdict is affirmed.