Ronald TREADWAY, Plaintiff–Appellee,

v.

**UNIROYAL TIRE COMPANY, A New York Corporation, Defendant–Appellant,**

and

**Otasco, Inc., an Oklahoma Corporation, Defendant.**

No. 61823.

Supreme Court of Oklahoma.

April 12, 1988.

As Corrected April 18 and Oct. 12, 1988.

Dissenting Opinion Nov. 10, 1988.

Bert M. Jones, J.A. McCullough, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, for defendant-appellant.

John D. Boydston, Harris, Boydston & Ghostbear, John A. Gladd, Gibbon, Gladd, Taylor, Smith & Hickman, Tulsa, for plaintiff-appellee.

ALMA WILSON, Justice:

In this appeal from a plaintiff's verdict in a manufacturers' products liability action, the appellant, who manufactured the automobile tire which the jury found caused the injury, submits three propositions of error. The appellant complains that a letter was improperly excluded from evidence, that an instruction was improperly worded, and that the verdict was excessive. In his answer brief, the appellee contends that the appellant's motion for new trial was defective because the motion was too vague and general to apprise the trial court of the reasons causing the appellant to seek relief, citing *Horizons v. Keo Leasing Co.*, 681 P.2d 757 (Okla.1984). We affirm the decision of the trial court.

On June 30, 1979, the appellee, a service station attendant, was attempting to mount a tire manufactured by the appellant when the tire burst and the resulting force fractured three bones in the appellee's wrist. The injury has limited the use and movement of the appellant's right hand. The appellee presented evidence that future surgery is likely. The appellee's theory in his prosecution of the case was that the tire was defective from the time of manufacture, and the defect caused the tire to burst while the appellee was airing up the tire. The appellant presented evidence at the trial to support its theory that the appellee failed to follow the instructions for properly mounting a tire, and that failure caused the tire to burst, and not any defect in the manufacturing process.

*Horizons* holds that a motion for new trial is insufficient to preserve any errors for appellate review if the motion is too vague and general to inform the trial court in a meaningful way of the reasons for the relief sought. An examination of the hearing on the motion reveals that the appellant argued three points of error which are also argued in its brief in chief. The only objection to these arguments was made at the very beginning of the hearing. After the trial court called the case, the appellee's attorney, without any explanation, objected to the motion.

Any lack of specificity in the language of a motion for new trial is cured at the hearing if the movant, "without any objection from the opposite party," precisely identifies each point of law which is fairly comprised in the general allegations of the defective motion. *Horizons*, 681 P.2d, at 759. The appellee argues that because *Horizons* uses the term "any" in describing objection, that the objection made should suffice. Such an objection is insufficiently specific and is no more effective than a nonspecific motion for new trial. An objection is not a mere marker to serve as a flag in locating potential legal errors for the preparation of an appeal. "The purpose of an objection in a trial is to call the court's attention to errors being committed so that the court, as well as the opposing party, will be advised and have an opportunity to correct them." *Hodo v. Cox*, 437 P.2d 249, 250 (Okla.1967), quoting *Ponca City Build-*

*ing & Loan Co. v. Graff,* 189 Okla. 410, 117 P.2d 514, 518 (1941). We therefore find that the appellee waived any objection to the form of the appellant's motion for new trial by appellee's failure to state the grounds for his objection.

The argument in appellant's motion for new trial included three propositions of error: (1) that the trial court erred in refusing to permit the appellant's counsel to cross-examine appellee's expert concerning a certain letter sent by appellant to the expert; (2) that the trial court improperly instructed the jury on the appellant's defense of misuse; and (3) that the verdict of $750,000.00 was excessive. As no other propositions of error were argued to the trial court, no other issues shall be addressed by this Court. *Horizons,* 681 P.2d, at 759.

■ In the cross-examination of the appellee's expert, Mr. Loren Forney, the appellant attempted to have a letter admitted into evidence, dated November 8, 1983, which was less than a month before trial, that offered to allow Mr. Forney to visit one of the appellant's plants where he would be provided with a vulcanizer and a quantity of raw tires in order to demonstrate how the bead could be broken during the vulcanizing process. The bead is the inside edge of the tire which seals against the wheel. The trial court ruled that the probative value of the letter was outweighed by the danger of prejudice to the appellee. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, and such a ruling by the trial court will not be distrubed on appeal in the absence of a strong showing of prejudice to the proponent. *Madill Bank and Trust Co. v. Herrmann,* 738 P.2d 567, 571 (Okla. App.1987). Although the letter was not allowed in to attack the credibility of the witness, appellant's counsel thoroughly cross-examined Mr. Forney. He subsequently questioned the appellant's expert concerning the impossibility of the bead breaking inside the vulcanizer which was the theory advanced by the appellee. We

find no abuse of the trial court's discretion in refusing to admit the letter.

■ In his second assignment of error, the appellant argues that the trial court's instruction number seven was equivalent in effect of eliminating the misuse issue from the jury's consideration, thereby substantially prejudicing the appellant. That instruction reads:

Defendants contend the plaintiff misused the Uniroyal tire, and defendant has the burden of proving such misuse as a defense.

Misuse of a product is where the method of using a product was not that which the manufacturer intended, or was it a use not reasonably anticipated by the manufacturer.

If the plaintiff was using the product in a manner that was foreseeable or could have been anticipated by the defendant, it is not misuse even if the plaintiff has been careless in that use.

In objecting to the wording of this instruction during the trial, the appellant asked the court to instruct that the tire could be misused if the appellee used the product in direct contravention of a legally sufficient warning which was on the product. The appellant argues in its brief that although the instruction given may have been an accurate statement of the law, it should have been tailored to fit the facts of the case.

The evidence shows that the instructions referred to specifically warn always to lubricate both beads and rim flanges with the proper solution which is described; always use a tire mounting machine with a holddown device to inflate a tire but never inflate a tire which is lying on the floor or other flat surface; never to inflate to seal the beads without using an extension hose with a guage and a clip-on chuck; never to stand next to or lean over a tire and wheel while inflating; and never to exceed 40 psi pressure. The warning continues that failure to follow the safety precautions may result in serious injury. The evidence is uncontested that the appellee took the tire from the mounting device in order to finish inflating it. He attempted to air the tire on

the ground in order to seal the beads, and after checking the air pressure, he reached over the tire and it burst, injuring him. Whether or not he properly lubricated the beads or exceeded the air pressure was contested. The issue is whether the failure to follow the instructions in this case constitutes misuse.

In establishing manufacturer's products liability in this State, the case of *Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla.1974) set out three defenses to this tort. The first is that the defective product did not cause the injury. The burden of proof for causation is on the plaintiff, and the record in the case at bar reveals that the trial court so instructed. The plaintiff must prove that the defect directly caused his injuries. The other two defenses to manufacturer's products liability, abnormal use and voluntary assumption of the risk of a known defect, are affirmative defenses and must be pled or they are waived. *RST Service MFG., Inc. v. Musselwhite*, 628 P.2d 366 (Okla.1981). *Kirkland* uses the term "abnormal use" interchangeably with "misuse." Misuse was pled by the appellant in its answer.

■ Abnormal use or misuse of a product occurs where the method of using a product is not that which the maker intended or is a use that could not reasonably be anticipated by a manufacturer. *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 56 (Okla.1976). As *Fields* observes, a distinction must be drawn between use for an abnormal purpose and use for a proper purpose but in a careless manner. The latter use would properly be described as contributory negligence, which is not a defense to manufacturer's products liability cases. Negligence in the use of a product does not bar recovery under this tort even though the negligence "contributed" to the accident. *Fields*, 555 P.2d, at 57. As there is no dispute that the appellant could reasonably anticipate that a tire may be inflated on the ground, off of a mounting machine, such action does not constitute misuse even though the appellee failed to follow the appellant's instructions. Such a failure could only be called contributory negligence.

The failure to follow the appellant's instructions is an issue of causation. The evidence if viewed in the light most favorable to the appellant would be that appellee's failure to inflate the tire on the mounting machine resulted in an overinflation and an explosion which injured the appellee, and that such an injury would have been prevented if the tire had been on the mounting machine. The appellant denied that the tire left the factory with any defect. The appellee's theory was that the tire was defective from the factory, that the appellee properly handled the tire except for the fact that he inflated it on the ground, and that the defect in the tire's bead was what caused the explosion. The appellee's expert stated that the appellee could have been injured even if he had left the tire on the mounting machine. The jury chose to believe the appellee. The issue is causation, and causation was correctly instructed upon. We find no error in the instruction given by the trial court on the issue of misuse.

■ The appellant's third and final assignment of error is whether the jury's verdict was excessive. The issue of damages in a personal injury action is left to the jury and before the jury verdict can be set aside as excessive, the award must strike mankind, at first blush as being beyond all measure unreasonable and show the jury to have been activated by passion, partiality, prejudice or corruption. *Dodson v. Henderson Properties, Inc.*, 708 P.2d 1064, 1066 (Okla.1985). We have also held that there can be no absolute standard to measure such damages, that the jury is given a wide latitude of discretion, and that a verdict will not be set aside for excessive damages unless the jury clearly committed some gross and obvious error, or acted under some improper bias, influence, or prejudice, or has totally mistaken the rules of law by which damages are regulated. *Carraco Oil Co. v. Morhain*, 380 P.2d 957, 960 (Okla.1963). In the hearing on the motion for new trial counsel for appellant stated that he could not determine what

could have caused the passion and prejudice he was alleging. He could only state that an award of $750,000 for the injuries received by the appellee was outrageous. The appellant correctly states that the amount of a verdict may be enough to indicate that the jury was in part motivated by prejudice and passion. *St. Louis–San Francisco Railway Co. v. Fox*, 359 P.2d 710, 716 (Okla.1961).

The evidence reveals that the appellee fractured bones in his right wrist, that the fractures necessitated surgery, that one of the bones did not properly heal, and appellee's physicians stated that a wrist fusion operation was recommended to alleviate the pain caused by traumatic arthritis. He has suffered a significant loss of grip, and if fused, the wrist would lose more movement. The appellee presented the following evidence of damages:

| | |
|---|---|
| Past Wages | $ 6,885.00 |
| Future Wages | 120,328.00 |
| Past Medical | 3,234.00 |
| Future Medical | 5,000.00 |
| | |
| TOTAL | $135,447.00 |

The trial judge instructed the jury to take into consideration the following elements of damages:

A. His physical pain and suffering, past and future;

B. His mental pain and suffering, past and future;

C. His age;

D. His physical condition immediately before and after the accident;

E. The nature and extent of his injuries;

F. Whether the injuries are permanent;

G. The physical impairment;

H. Loss of earnings time;

I. Impairment of earning capacity;

J. The reasonable expenses of the necessary medical care, treatment, and services, past and future.

At the time of trial the appellee had a life expectancy of 43.35 additional years, and his physical activities such as handiwork around the house, sports activities, and his ability to play his guitar were greatly restricted. The trial court instructed that the

total amount awarded should not exceed $1,562,705.00, which was the amount sued for. The jury awarded less than half that amount. We find no abuse of the jury's discretion in the award.

AFFIRMED.

DOOLIN, C.J., HODGES, J., and BAILEY, S.J. (appointed in place of SUMMERS, J., who disqualified), concur. KAUGER, J., concurs by reason of stare decisis.

HARGRAVE, V.C.J., and LAVENDER, OPALA and SIMMS, JJ., dissent.

HODGES, Justice specially concurring.

I agree with the result of this Court's decision today. I also find no reversible error in the instruction given by the trial court on the issue of product misuse.

The giving of an erroneous instruction will not warrant reversal of the trial court's judgment unless it appears the jury was misled thereby, resulting in a miscarriage of justice. *Kirkland v. General Motors Corporation*, 521 P.2d 1353, 1367 (Okla.1974); *Seay v. General Elevator Company*, 522 P.2d 1022, 1028 (Okla.1974). In my view, the misuse instruction was not such that the jury would have rendered a different verdict.

Upon examination of the entire record I find there was no evidence which warranted invocation of the affirmative defense of misuse as previously defined by this Court in *Smith v. United States Gypsum Co.*, 612 P.2d 251 (Okla.1980); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 56–57 (Okla.1976). Here, Treadway was mounting the tire, obviously a use for a proper purpose, but purportedly in a careless manner inasmuch as he did not follow the safety instructions and warnings of Uniroyal. In addition, Treadway's conduct was reasonably foreseeable by Uniroyal. Treadway's conduct constituted at most contributory negligence and as such cannot be considered as a complete defense in a manufacturers' products liability case, unless this conduct was the sole cause of the accident. *Smith v. United States Gypsum*

*Co.*, 612 P.2d 251, 256 (Okla.1980), *Fields v. Volkswagen of America, Inc.*, 555 P.2d at 57.

Uniroyal claims the dispositive issue is: "Does failure to follow a legally sufficient warning constitute misuse of a product?" If Uniroyal's analysis is correct, then the trial court should have directed a verdict in its favor. But that is not the correct issue in this case. It is not denied that Treadway did not follow Uniroyal's tire mounting instructions. Nor does Treadway contend the instructions and warnings were insufficient. Treadway claims there was an unreasonably dangerous defect in the tire because of a manufacturer's flaw. He does not base his claim on a defective product design or inadequate warning.

Consequently, the determinative issue is what caused the tire to explode. Did the tire explode because Uniroyal manufactured a defective tire or did the tire explode solely because of the manner in which Treadway mounted the tire in violation of Uniroyal's written instructions (use for the intended purpose but in a negligent manner)? Uniroyal cannot create a defective tire which causes injury and then excuse its liability by the claim that sufficient adequate warning was given.

Upon examination of the record and transcript it appears that there was expert testimony which would support either position concerning causation. Treadway's expert witness testified that putting a tire on a mounting machine does not prevent the tire from exploding. The witness further testified that even if the tire rim is "fastened to the machine and the tire explodes, that doesn't necessarily at all mean that it's not going to—that it's going to keep the tire on the machine." As the majority put it, "The jury chose to believe the appellee." Consequently, Uniroyal's claimed misuse became irrelevant because the jury found the defective tire was the direct cause of the explosion, not Treadway's purported negli-

gent conduct or use of the tire. From my examination of the record, there was competent evidence for the jury to find the defect caused the explosion.

The only jury instruction Uniroyal was entitled to, which the trial court failed to give, was a charging instruction which would inform the jury that if they found the *sole cause* of the accident was Treadway's negligent use of the product, i.e., failure to properly follow Uniroyal's mounting instructions, then they should render a verdict for Uniroyal. Instead, the trial court gave the following instruction, number 7:

"Defendants contend Plaintiff misused the Uniroyal tire and Defendant has the burden of proving such misuse as a defense.

"Misuse of a product is where the method of using a product was not that which the manufacturer intended or was a use not reasonably anticipated by the manufacturer.

"If the Plaintiff was using the product in a manner that was foreseeable or could have been anticipated by the Defendant, it is not misuse even if the Plaintiff may have been careless in that use."

In jury instruction number 9,[1] the trial court told the jury that if the evidence shows Treadway was guilty of misuse as defined in the above instruction number 7, then their judgment should be for Uniroyal and against Treadway.

The effect of the above two instructions was a less stringent burden of proof for Uniroyal's defense of Treadway's alleged negligent conduct. Under the court's instructions, Uniroyal would be entitled to a verdict even if Treadway's negligent conduct or use of the defective product was merely a contributing factor causing the injury to occur, rather than the sole cause of the accident. Negligent conduct or use of the product by a plaintiff which does not

---

1. Instruction number 9 read:

"If you find by a preponderance of the evidence that the Plaintiff has met its burden for proving his case under the law of Manufacturer's Products Liability as set out in Instruction No. 4, and that the Defendant has

not proven that Plaintiff was guilty of misuse of the tire as defined herein, then your judgment shall be for the Plaintiff and against the Defendant.

"If you do not so find, however, then your verdict shall by [sic] for the Defendant."

amount to misuse is not a bar to a plaintiff's claim unless such conduct is the sole cause of the plaintiff's injury. If the defendant manufacturers a defective product which causes injury to a person and that person's negligent use of the product was only a contributing factor, then in that event such conduct is not a complete defense in a manufacturers' products liability case.

It is well settled that a party may not complain on appeal of an erroneous instruction that is more favorable to that party than it is entitled to and the giving of the instruction does not constitute reversible error. *Taylor v. Birks*, 325 P.2d 737, 740–41 (Okla.1958). It therefore follows that the trial court's erroneous instruction of the defense of misuse was not prejudicial and therefore is harmless error.

With regard to appellant's assertion that the jury's verdict was excessive, I agree with this Court's rejection of this contention. I may add that initially the verdict of $750,000 appears somewhat shocking. But upon review of the evidence there is absolutely no bias or prejudice shown in the record to support a remittitur or a new trial. The amount of damages awarded is the prerogative of the jury and this Court has no right to interfere absent a finding "the jury were activated by prejudice or guilty of abuse and passionate exercise." *Dodson v. Henderson Properties, Inc.*, 708 P.2d 1064, 1066 (Okla.1985).

In sum, I concur in affirming the judgment of the trial court.

I am authorized to state Justice YVONNE KAUGER concurs in the views expressed herein.

OPALA, Justice, with whom LAVENDER, and SIMMS, JJ, join, dissenting.

Today the court affirms the judgment on jury verdict in a manufacturer's products liability action and pronounces that [1] the defendant sufficiently preserved claimed errors for appellate review; [2] the trial court correctly excluded certain midtrial evidence; [3] the trial court's refusal to give a specially tailored instruction concerning the misuse defense was not error; and [4] the amount of damages awarded by the jury was not excessive.

I must recede from the court's affirmance of the judgment. In trials of legal actions the district court must *sua sponte* charge the jury on *all* critical issues in the case. Its failure to discharge this responsibility is a ground for new trial. Because the instructions given by the trial court were not tailored to the material issues raised by evidence admitted without objection, the *essence* of the manufacturer's defense was never communicated to the fact triers. I would reverse the judgment and remand the case for a new trial.

I

THE ANATOMY OF LITIGATION

While working as a part-time service station attendant, Ronald Treadway [Treadway] was injured by a tire that exploded when it was being mounted for a customer. Manufactured by Uniroyal Tire Company [Uniroyal], the offending tire was the last of four new ones Treadway was mounting. For mounting the first three tires Treadway used a machine without incident. While inflating the fourth tire Treadway did not use the mounting machine because a vital piece of that equipment was then elsewhere in use. Instead, Treadway moved the fourth tire to the station's center island and attempted to inflate it with the aid of an "O" ring. The tire blew when Treadway was reaching across it with an air hose. The explosion, which hurled the tire twenty feet in the air, caused injury to Treadway's wrist by fracturing three bones, one of which did not respond to treatment. Treadway brought this action against Uniroyal and the retailer. He sought to predicate liability on a manufacturing defect in the tire.

As it did in the trial court so also on appeal Uniroyal ascribes Treadway's injury to his failure to follow the instructions and warnings printed on the tire's label. That label directed *a user not to:* [1] inflate the tire without a mounting machine, [2] lean over the tire while inflating it, and [3] inflate the tire beyond 40 p.s.i. Included in each label was a warning that the user's failure to follow the instructions could re-

sult in serious injury. *According to undisputed proof, Treadway did not follow the first two of these instructions when inflating the fateful tire, although he was familiar with their content and was aware of the danger from disregarding them.*

Based on Treadway's *undisputed* failure to follow the warnings on the tire's label, Uniroyal sought to assert a "misuse" defense. In its jury charge on "misuse of product" the trial court refused to include an explanation of Treadway's failure to follow the tire mounting instructions. None of the other charges given below mentioned the tire label's instructions and warnings or the legal effect, if any, of Treadway's failure to obey them.

## II

**DEFENDANT'S DEFENSE THAT PLAINTIFF DISREGARDED KNOWN TIRE MOUNTING INSTRUCTIONS AND WARNINGS PRINTED ON THE PRODUCT'S LABEL DOES NOT FALL UNDER THE RUBRIC OF PRODUCT'S "MISUSE"**

The trial court instructed generally concerning the defense of misuse in a manufacturer's products liability action.[1] Uniroyal argues it was entitled to an instruction informing the jury that Treadway's failure to follow the tire mounting instructions could constitute a misuse of the product. Several cases from other states are cited in an effort to persuade this court that the user's failure to follow known operating instructions can constitute a misuse of the product.[2] Whatever may be the law in those jurisdictions, it is clear that *on this record* a defense of misuse was unavailable to Uniroyal under the Oklahoma norms of strict liability.

In *Kirkland v. General Motors Corp.,*[3] the genesis of manufacturer's products liability in Oklahoma, we noted that among the permissible strict liability defenses are (1) misuse of a product and (2) voluntary assumption of or exposure to the risk from a known defect or danger. The latter is a variant of the common-law concept known by the Latin maxim of *volenti non fit injuria.*[4] The phrase means that one who voluntarily exposes himself to a known, appreciated and avoidable danger may not recover for injuries occasioned by the expo-

---

1. Instruction No. 7 embodies the trial court's charge on misuse of product. It states in pertinent part that:
   "* * * Misuse of a product is where the method of using a product was not that which the manufacturer intended or was a use not reasonably anticipated by the manufacturer. If the Plaintiff was using the product in a manner that was foreseeable or could have been anticipated by the Defendant, it is not misuse even if the Plaintiff may have been careless in that use."
   *No other jury charge* dealt with Treadway's disregard of the instructions and warnings on the tire.
   There is presently *no* recommended jury charge on misuse of product. See Chapter 12, *Products Liability,* Uniform Civil Jury Instructions [UCJI 1981].

2. *Hoffman v. E.W. Bliss Co.,* 448 N.E.2d 277 [Ind.1983]; *Kroon v. Beech Aircraft Corp.,* 465 F.Supp. 1223 [M.D.Fla.1979], *aff'd,* 628 F.2d 891 [5th Cir.1980]; *Kay v. Cessna Aircraft Co.,* 548 F.2d 1370 [9th Cir.1977]; *Sun Val. Airlines, Inc. v. Avco–Lycoming Corp.,* 411 F.Supp. 598 [D.Idaho 1976]; *Borel v. Fibreboard Paper Products Corporation,* 493 F.2d 1076 [5th Cir.1973]; *Perfection Paint & Color Company v. Konduris,* 147 Ind.App. 106, 258 N.E.2d 681 [1970] and *McDev-*

*itt v. Standard Oil Company of Texas,* 391 F.2d 364 [5th Cir.1968].

3. 521 P.2d 1353, 1366 [Okl.1974]. See also *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 56 [Okl.1976] and *Smith v. United Gypsum Co.,* 612 P.2d 251, 254 [Okl.1980].

4. For an explanation of the *volenti* doctrine's historical antecedents, see footnote 8 *infra.* The maxim *volenti non fit injuria,* which means that a person who consents to an act is not wronged by it, is predicated on the theory of knowledge and appreciation of the danger and voluntary assent to the risk associated with it. For other jurisdictions discussing the *volenti* doctrine, see *Gray v. E.J. Longyear Company,* 78 N.M. 161, 429 P.2d 359, 362 [1967] *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 379 [Tex.1963]; *Munson v. Bishop Clarkson Memorial Hospital,* 186 Neb. 778, 186 N.W.2d 492, 494 [1971]; *Walsh v. West Coast Coal Mines,* 31 Wash.2d 396, 197 P.2d 233, 238–239 [1948] and *Lyons v. Redding Construction Company,* 83 Wash.2d 86, 515 P.2d 821, 822–826 [1973]. For Oklahoma cases recognizing the doctrine, see *Davis v. Whitsett,* 435 P.2d 592, 599 [Okl.1967]; *Briscoe v. Oklahoma Natural Gas Company,* 509 P.2d 126, 129 [Okl.1973]; *Centric Corp. v. Morrison–*

sure.[5]

In *Fields v. Volkswagen of America, Inc.*[6] we defined a product's misuse *as that use which is not reasonably foreseeable by the manufacturer.* Here, it is apparent that Uniroyal could anticipate that consumers would attempt to mount its tires. Assuming Treadway did not follow the known instructions, his conduct—in the context of a products liability claim—could not be considered a misuse but might be viewed as a form of contributory negligence.[7] The lat-

ter defense is not available in products liability litigation [8] when it is sought to be invoked for the plaintiff's "failure to discover the defect in the product, or to guard against the possibility of its existence." [9] On the other hand, "the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of *assumption of risk,*" is invocable as a defense sanctioned by § 402A, Restatement (Second) of Torts, as it is in other cases of strict liability.[10]

---

*Knudsen Co.,* 731 P.2d. 411, 419 [Okl.1986]; see also, Black's Law Dictionary, 5th ed., p. 1412 [1979].

**5.** The *volenti* doctrine is a universally recognized defense in products liability actions. The proper verbalization of this defense is *voluntary assumption of or exposure to the risk of a known defect. Kirkland v. General Motors Corporation, supra* note 3 at 1366 and *McMurray v. Deere and Company, Inc.,* 858 F.2d 1436 [10th Cir.1988]. See Annot., *Products Liability: Contributory Negligence or Assumption of Risk as Defense Under Doctrine of Strict Liability in Tort,* 46 A.L.R.3d 240, 253–256 § 5(a) [1972]; Annot., *Distinction Between Assumption of Risk and Contributory Negligence,* 82 A.L.R.2d 1218 [1962] and Joseph W. Little, *Torts: The Civil Law of Reparation for Harm Done by Wrongful Act,* § 9.02, pgs. 435, 442–443 [1985]; see also, *Shields v. Morton Chemical Company,* 95 Idaho 674, 518 P.2d 857, 859–860 [1974].

**6.** *Fields v. Volkswagen of America, Inc., supra* note 3 at 56–57. See also *Smith v. United Gypsum Co., supra* note 3 at 254.

**7.** *Fields v. Volkswagen of America, Inc., supra* note 3 at 56 and *Smith v. United Gypsum Co., supra* note 3 at 254.

**8.** *Kirkland v. General Motors Corporation, supra* note 3 at 1366; *Moss v. Polyco, Inc.,* 522 P.2d 622, 627 [Okl.1974]; *Hogue v. A.B. Chance Co.,* 592 P.2d 973, 975 [Okl.1979] and *McMurray v. Deere and Company, Inc., supra* note 5. The defenses of *assumption of risk* and *contributory negligence,* although closely allied, are conceptually distinguishable. While they may arise under the same set of facts and thus sometimes overlap each other, they are founded on separate and distinct principles of law. See *Kleppe v. Prawl,* 181 Kan. 590, 313 P.2d 227, 230–231 [1957]; *White v. McVicker,* 216 Iowa 90, 246 N.W. 385, 386 [1933]; *Watterlund v. Billings,* 112 Vt. 256, 23 A.2d 540, 543 [1942] and *Landrum v. Roddy,* 143 Neb. 934, 12 N.W.2d 82, 89 [1943]. The latter doctrine is the product of the law of negligence whose source is traceable to *Butterfield v. Forrester,* 103 Eng.Rep. 926 [K.B.1809]. Assumption of risk, on the other

hand, had crystallized much earlier in the form of the maxim *volenti non fit injuria, supra* note 5, which reflects the Roman law's notion of legal wrong or *injuria.* The principle embodied in the maxim is that a loss inflicted by one's *voluntary act or submission* is not actionable. Dig. 47, 10, 1, 5 (*Quia nulla injuria est, quae in volentem fiat*); see Burdick, *Principles of Roman Law,* pg. 504 [1938]. The *volenti* doctrine is expressed as a common-law rule both in *Cruden v. Fentham,* 2 Esp. 685, 170 Eng.Rep. 496 [1799] and *Priestley v. Fowler,* 3 M. & W. 1, 150 Eng.Rep. 1030, 1031–1033 [1837] (a master and servant case where the *volenti* defense is believed to have received its greatest impetus). See Prosser and Keeton, *The Law of Torts,* § 68, p. 480 [5th Ed.1984].

*Assumption of risk* involves voluntary exposure to a known danger and entails both a *subjective* knowledge and appreciation of the risk involved as well as a voluntary acquiescence. In contrast, *contributory negligence* is based on an *objective* standard of conduct which, though it may be inadvertent, falls below the degree of care which would have been exercised by a reasonable person. It often involves the inquiry as to whether the conduct of the plaintiff falls below that of a reasonably prudent man in the protection of himself and is a contributing cause to the injury. It implies the omission of a duty on the part of the injured person and excludes the idea of willfulness. See *Walsh v. West Coast Coal Mines, supra* note 4, 197 P.2d at 238–239; *Detrick v. Garretson Packing Company,* 73 Wash.2d 804, 440 P.2d 834, 837 [1968] and *Lyons v. Redding Construction Company, supra* note 4, 515 P.2d at 822–826.

**9.** See comment n § 402A of the Restatement (Second) of Torts.

**10.** See comment n following § 402A; see also, *Shields v. Morton Chemical Company, supra* note 5, 518 P.2d at 860, citing to Restatement (Second) of Torts § 402A, comment n at page 356 and *McMurray v. Deere and Company, Inc., supra* note 5. In *Shields,* the court noted the universal agreement that contributory negligence *in the sense of misuse of the product* or of *voluntarily and unreasonably proceeding in the*

In short, the court correctly concludes that Uniroyal was not entitled to a jury charge explaining that Treadway's admitted failure to follow tire mounting instructions and warnings constitutes a product's "misuse."

## III

THE DEFENDANT'S RELIANCE ON THE PLAINTIFF'S DISREGARD OF FAMILIAR TIRE MOUNTING INSTRUCTIONS AND OF THE DANGERS FROM A USER'S NONCOMPLIANCE ENTITLED THE DEFENDANT TO A JURY CHARGE ON VOLUNTARY ASSUMPTION OF THE RISK OF A KNOWN DEFECT AND DANGER

It is *undisputed* that Treadway did not use a mounting machine to inflate the tire and that he leaned over the tire while inflating it. Both of these actions were in direct contravention of the instructions printed on the label, of whose content he was aware.[11] Moreover, Treadway knew that disregarding the warnings could be potentially dangerous. Under these circumstances, Uniroyal was entitled to an instruction on the defense of voluntary assumption of or exposure to the risk of a known defect or danger.[12] The evidence clearly called for submission of this defense to the jury. Whenever the legal effect of adequate warnings on the product is an important issue of law in the case, the court has a duty to charge the jury on that issue.[13]

While Uniroyal did not plead voluntary assumption of risk as one of its defenses in the answer, evidence of Treadway's failure to heed instructions and warnings that were admittedly known to him was introduced without objection. Moreover, that evidence was relevant upon the general issue of the product's safety.[14] *The admission of this evidence*, under the law of Oklahoma *then in force, operated to amend the answer* to make it conform to the proof of voluntary assumption of risk, *even though no formal amendment was sought and none was ordered to be made by the trial court.*[15] In short, the defense,

---

*face of a known danger* are good defenses to strict liability. See also Annot., *Products Liability: Contributory Negligence or Assumption of Risk as Defense under Doctrine of Strict Liability in Tort, supra* note 5 at § 5, p. 253, citing *Kirkland v. General Motors, supra* note 3, and thirty other jurisdictions for the view that "assumption of risk", meaning voluntarily and unreasonably proceeding to encounter a known danger, is a defense to an action based upon strict liability in tort.

11. *Neither Treadway's familiarity with the tire mounting instructions and warnings nor the adequacy (sufficiency) of the information printed on the label was a disputed issue below.*

12. See the discussion in the text of the opinion at footnote 23 *infra.* The recommended jury instruction on assumption of risk that bears No. 9.14 and is found in Chapter 9, *Negligence–Comparative Negligence,* Uniform Civil Jury Instructions [UCJI 1981], appears to be usable *only* in trials of negligence-based tort claims. With a slight change in its verbiage, it could be easily adapted for use in products liability cases.

In *Smith v. United States Gypsum Co., supra* note 3 at 254–255, we refused to hold that an instruction on voluntary assumption of a known defect was required in the trial of that case. There, we found no evidence the defendant knew failure to follow the warnings would make the product more dangerous. That is not the situation in the appeal before us now.

13. *Gauthier v. AMF, Inc.,* 788 F.2d 634, 636 [9th Cir.1986].

14. See the discussion in the text of the opinion at footnote 23 *infra.*

Comment j, § 402A of the Restatement (Second) of Torts, states in pertinent part:

" * * * Where warning is given, the seller may reasonably assume that it will be read and heeded; and *a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.*" [Emphasis added.]

15. The principle has long been established in Oklahoma that when evidence of an unpleaded defense is admitted without objection, the responsive pleading of the defendant stands amended to conform to the proof. See *Nelson v. King,* 92 Okl. 5, 217 P. 360, 362 [1923] and *Blumenfeld v. Mann,* 126 Okl. 64, 258 P. 918 [1927] (syllabus 1). In *Blumenfeld* the court stated in syllabus 1 that "[t]hough there be a variance between the allegations of an answer and the facts proved on the trial without objection, yet, if it be a case where an amendment of the answer ought to be allowed to conform it to the facts proved, the judgment will not be reversed on account of such variance."

though not pleaded in terms of *volenti non fit injuria*, was an issue in the case because *undisputed evidence, admitted sans objection, operates as an amendment of the pleadings.*[16]

By a requested instruction offered under the incorrect label of "misuse", Uniroyal asked for a jury charge on the legal effect of the plaintiff's disregard of the written instructions and warnings. It also orally

asked for the comment j instruction, Restatement (Second) of Torts § 402A, i.e., that a product with a sufficient warning is not unreasonably dangerous.[17] Since none of the instructions given below addressed the effect of Treadway's failure to follow the instructions for mounting the tire, the absence of any charge explaining the defense of voluntary exposure to a known risk must be considered crucial and prejudicial.[18] Although Uniroyal did not *in iis-*

See also *Liberty Plan Co. v. Francis T. Smith Lumber Co.*, 360 P.2d 500, 503 [Okl.1961]; *Conaway v. Bolt*, 174 Okl. 180, 50 P.2d 170, 171 [1935]; *Stroup v. Brittain*, 105 Okl. 276, 232 P. 814, 815 [1925] and *Parsons v. Heenan*, 104 Okl. 86, 230 P. 502, 503 [1924]. In *Cook v. Sheffield*, 181 Okl. 635, 75 P.2d 1101, 1104 [1938], the court said: "The attention of the court must be specifically called to the variance and its prejudicial effect shown ... Unless this is done the party complaining waives the variance, and the pleading will be deemed to have been amended to conform to the proof." To the same effect is *First Nat. Bank v. Cox*, 83 Okl. 1, 200 P. 238 [1921] (syllabus 3) and *Coats v. Duncan*, 202 Okl. 188, 211 P.2d 269, 270 [1949] (syllabus 2). In *Coats* the court stated the rule that "[w]here evidence is introduced, without objection, which is inadmissible because not within the issues, on appeal the Supreme Court may consider the pleadings as amended to conform to the proof where the amendment would have been proper at the trial."

This common-law principle is incorporated in the 1984 Oklahoma Pleading Code, 12 O.S.Supp. 1984 §§ 2001 et seq., where it *is codified* in § 2015B, which provides:

"AMENDMENTS TO CONFORM TO THE EVIDENCE. When issues not raised by the pleadings or by the pretrial conference order, where the order has superseded the pleadings, are tried by express or implied consent of the parties, *they shall be treated* in all respects as if they had been raised in the pleadings or the pretrial conference order. Such amendment as may be necessary to cause the pleadings or the pretrial conference order to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *" [Emphasis added.]

16. The evidence of a defense that was not plead constitutes "variance." This is so because the proof of such defense *"varies"* from the *pleaded issues.* Evidence of an unpleaded defense, when met with a timely objection, may be excluded. Once "varying" evidence of an unplead defense has been admitted without objection, the answer stands amended, by operation of law, to incorporate that unplead defense and thus make the answer conformable to the elicited proof. *Cook v. Sheffield, supra* note 15 75

P.2d at 1104; *Liberty Plan Co. v. Francis T. Smith Lumber Co., supra* note 15 at 503; *Conaway v. Bolt, supra* note 15 50 P.2d at 171; *Stroup v. Brittain, supra* note 15 232 P. at 815 and *First Nat. Bank v. Cox, supra* note 15 200 P. at 241.

*Treadway's disregard of instructions and danger warnings would have been admissible even if an objection to its proffer had been timely interposed on grounds of variance. It clearly was relevant on the issue of the product's safety.*

17. Counsel for Uniroyal did seek below a jury charge on the effect of Treadway's disregard of the warnings and instructions, which would explain the manufacturer's assertion that the product was not unreasonably dangerous. This charge was requested in the following statement made to the court:

"... [T]he jury should be instructed as the Supreme Court said in *Smith v. U.S. Gypsum* Case, that when a *product has a warning on it* when if followed *the product is not unreasonably dangerous...."* [Emphasis added.]

See also *supra* note 14 for the text of comment j, Restatement (Second) of Torts.

18. Uniroyal's critical defense was grounded on Treadway's disregard of known instructions and of appreciated danger. Nowhere in the 15 instructions given by the trial court was that defense explained to the jury. In Instruction 9 the jury was told that if "the Defendant has not proven that Plaintiff was guilty of misuse of the tire as defined herein, then your judgment shall be for the Plaintiff and against the Defendant." Under the instructions as a whole, Instruction 9 was thus tantamount to a directed verdict for the plaintiff. This is so because the plaintiff's conduct obviously did not fit into "misuse" as that term was defined in Instruction 7, *supra* note 1.

Whether Uniroyal chose the proper label for the description of its defense—misuse, *volenti* or simply a denial that the product was dangerous as labeled—the evidence and the requested instructions were quite sufficient to call the trial court's attention to the *essence* of Uniroyal's defense grounded on Treadway's disregard of instructions and warnings. *The trial court has the duty to instruct on its own motion on all the issues and theories of both parties. Its failure to*

*dem terminis* submit to the trial court a requested jury charge on the effect of Treadway's disregard of known instructions and warnings, the omission is not fatal to the corrective relief sought here. This is so because the trial court clearly had the duty to instruct the jury on this issue. It stood tendered by the evidence admitted without objection and was critical to Uniroyal's defense of the claim.[19] In jury trials of actions at law the district court bears the duty to charge the jury *sua sponte* on *all* critical issues in the case, and

> instruct on a material or critical defense adduced by the proof constitutes reversible error. The fact that Uniroyal's defense may have been mischaracterized does not relieve the court of its affirmative responsibility to act in providing the jury with meaningful guidance. See *Cunningham v. Charles Pfizer & Co., Inc.,* 532 P.2d 1377, 1382 [Okl.1975]; *Thompson v. Galion Iron Works & Mfg. Co.,* 201 Okl. 182, 203 P.2d 438, 442 [1949]; *Elam v. Beverly,* 191 Okl. 375, 129 P.2d 838, 840 [1942] and *International Harvester Co. of America v. Snider,* 184 Okl. 537, 88 P.2d 606, 610 [1939].

19. *Acker v. Hopfeld,* 416 P.2d 953, 956 [Okl. 1966]; *McKee v. Neilson,* 444 P.2d 194, 199 [Okl. 1968]; *Croy v. Bacon Transport Co.,* 604 P.2d 136, 138 [Okl.1979] and *Middlebrook v. Imler, Tenny & Kugler M.D.'s,* 713 P.2d 572, 579 [Okl. 1986].

20. It is well established in extant case law that the trial court has the duty to instruct the jury properly on decisive issues made by pleadings and evidence introduced at the trial and that failure to do so is reversible error. See *First Nat. Bank v. Cox, supra* note 15 200 P. at 241; *Liberty Nat. Bank of Weatherford v. Semkoff,* 184 Okl. 18, 84 P.2d 438, 440 [1938]; *Roadway Express v. Baty,* 189 Okl. 180, 114 P.2d 935, 938 [1941]; *Petty v. Frank,* 194 Okl. 382, 151 P.2d 926, 929 [1944] and *Peoples Bank of Aurora v. Haar,* 421 P.2d 817, 818 [Okl.1966] (syllabus 3); *Rader v. Fleming,* 429 P.2d 750, 751 [Okl.1967] (syllabus 1) and *McKee v. Neilson, supra* note 19 at 195 (syllabus 2). In *Haar, supra,* the court stated the rule in syllabus 3 that "it is the duty of the court, even though not requested to do so, to cover all material issues and the proper theories of the parties in the instructions to the jury." In *First Nat. Bank v. Cox, supra* note 15 200 P. at 241 the court noted that the issue on appeal arose from the evidence and was at variance with the issue joined with the pleadings, but held that it was waived since it was not objected to. The court stated that *"[i]t is the duty of the court to give, upon his own motion, a substantially correct and proper instruction of the law as is applicable to the facts and issues joined."* [Emphasis mine.]

its failure to carry out this responsibility is a ground for new trial.[20]

Uniroyal's critical defense targets Treadway's disregard of known instructions and appreciated danger. The instructions given, considered either individually or *in toto,* clearly lack the contextual tailoring to the evidence presented and issues raised by Uniroyal's defense to carry a meaningful message to the fact finders.[21] In short, the *essence* of Uniroyal's response to the claim pressed against it never was communicated to the jury.[22]

21. See *Spencer v. Nelson Sales Co., Inc.,* 620 P.2d 477, 481 [Okl.App.1980].

22. Although Uniroyal did not request an instruction based on Treadway's disregard of known instructions and of appreciated danger, we still must determine whether it was entitled to one because it was a critical issue in the case. Determining whether a litigant should reap the benefit of a legal theory on appeal even though that legal theory was not presented to the trial court is a difficult determination. The public's interest in judicial economy supports the proposition that a lawyer must articulate his legal theories to the trial court before relying upon them on appeal. *Chaney v. Fields Chevrolet Co.,* 258 Or. 606, 484 P.2d 824, 827 [1971] (Holman, concurring). The rule against raising new legal theories also prevents unfair surprise to the appellee. *Stokes v. Stokes,* 143 Ariz. 590, 694 P.2d 1204, 1206 [App.1984]. On the other hand, the public's interest in seeing that the law is correctly applied in every case supports the idea that, on occasion, an appellate court should consider legal theories for the first time on appeal. *Chaney, supra* 484 P.2d at 827. The rule against allowing previously untendered theories is procedural and prudential rather than jurisdictional, so exceptions may be made. Where the record contains *significant* evidence which *clearly* supports the unarticulated legal theory, no prejudice results to the appellee if the appellate court departs from the rule. *Stokes, supra* 694 P.2d at 1206. If the admitted evidence is, as here, undisputed, the law's interest becomes even weightier in favor of allowing review on a theory that applies but was not crisply stated below in the precise verbal garb of accepted terminology.

Uniroyal placed heavy emphasis at trial on Treadway's failure to heed known warnings and danger. It relied upon these facts in pressing a misuse theory rather than a voluntary-assumption-of-the-risk-of-a-known-defect defense. Little prejudice results to Treadway if this court analyzes these fully *litigated and undisputed facts* in light of a new legal theory. In this case, public interest in the law's correct application required that the defendant have the *essence* of

A plaintiff's failure to follow tire mounting instructions has been assessed under several discrete rubrics of analysis germane to a manufacturer's products liability claim.[23] Treadway's disregard of familiar warnings was indeed relevant to the affirmative defense of voluntary assumption of the risk of a known defect, as well as to the other disputed issues with respect to causation and to the unreasonable dangerousness of the product.[24] If the trial court had incorporated the legal effect of Treadway's heedless conduct within either its causation or its "unreasonably dangerous" charge, its failure specifically to instruct on assumption-of-risk theory might not have been a reversible error. But because the assumption defense was not included in *any* of the instructions given, the essential ingredient—nay, the very heart—of Uniroyal's claim to exoneration from liability for its allegedly defect-free product was obscured and withheld from the fact triers.

I would hence reverse the judgment and remand the case for a new trial.

its defense explained to the jury *in one verbal form or another.* For these reasons, I believe it was prejudicial and hence reversible error for the trial court not to incorporate the legal effect of Treadway's conduct in *any* of its instructions to the jury.

**23.** *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1331 [8th Cir.1985]; *Collins v. B.F. Good-*

*rich Co.,* 558 F.2d 908, 910–912 [8th Cir.1977]; *Breazeale v. B.F. Goodrich Co.,* 564 F.Supp. 1541, 1544 [E.D.La.1983]; see generally cases collected at Anno., *Products Liability: Liability for Injury or Death Allegedly Caused by Defective Tire,* 81 A.L.R.3d 318, at § 11, pp. 360–363 [1977].

**24.** See cases cited in footnote 23 *supra.*