26 F.3d 134
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Virginia Joan HOWARD, aka Virginia Culver-McNeal, Defendant-Appellant.
 No. 93-30185.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1994.
Decided May 26, 1994.
 
 Before: ALARCON, NORRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Virginia Culver Howard was convicted of one count of fraudulently obtaining more than $200.00 in funds insured by the Federally Insured Student Loan and Assistance Programs (FISLAP), in violation of 20 U.S.C. Sec. 1097(a). Howard raises three issues on appeal: (1) the district court abused its discretion by admitting evidence of prior uncharged bad acts; (2) the district court abused its discretion by refusing to grant a new trial based on her claim that newly discovered evidence demonstrates that she suffers from a multiple personality disorder; and (3) the district court erred in considering information concerning her prior bad acts to determine the base level of her offense.
 
 
 3
 We conclude that the district court did not abuse its discretion in admitting evidence at trial of Howard's prior bad acts. We also hold the district court did not err in considering information concerning Howard's prior bad acts in exercising its sentencing discretion. We vacate the judgment and the order denying a new trial because the district court erred in concluding that the newly discovered evidence that Howard suffers from a mental disorder was cumulative. We discuss each issue and the facts pertinent thereto under separate headings.
 
 I.
 
 4
 Admissibility of Prior Fraudulent Loan Applications
 
 
 5
 Howard contends that evidence of her prior student loans was inadmissible at her trial because (1) it was irrelevant, (2) its probative value was outweighed by the danger of unfair prejudice, and, (3) even if the admission of her earlier student loans was not reversible error, the cumulative effect was so prejudicial that it warranted reversal. We review a district court's admission of evidence under Rule 404(b) for abuse of discretion. United States v. Robertson, 15 F.3d 862, 869 (9th Cir.1994).
 
 
 6
 Although evidence of prior bad acts is not admissible "to prove the character of a person in order to show action in conformity therewith," it may be admitted to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). We review the admissibility of evidence of prior acts under Rule 404(b) to determine whether
 
 
 7
 (1) the other act evidence must tend to prove a material point; (2) the other act must not be too remote in time; (3) the evidence must be sufficient to support a finding that the defendant committed the other act; and (4) in some cases, the other act must be similar to the act charged.
 
 
 8
 United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400 (9th Cir.), cert. denied, 111 S.Ct. 2861 (1991).
 
 
 9
 In the instant case, the Government offered the prior acts evidence to prove knowledge and intent to defraud. Howard does not dispute the sufficiency of the prior acts evidence or that it tends to prove a material point. Howard's sole challenge is that the uncharged acts were too remote in time. We have previously held that if the prior acts are similar to the crime charged, the remoteness requirement becomes less important. See United States v. Hadley, 918 F.2d 848, 851 (9th Cir.1990) (holding that evidence of an act of sexual molestation committed 13 years before the crime for which the defendant was on trial was admissible because the acts were so similar), cert. denied, 113 S.Ct. 486 (1992). In this case, the prior acts evidence included student loans Howard received between 1985 and 1987. The application process for the student loan charged in the indictment commenced in December of 1988, and Howard's receipt of the funds continued through January of 1989. Thus the time between the commission of the charged offense and the earlier prior act is approximately three years.
 
 
 10
 The prior acts were remarkably similar to Howard's conduct in perpetrating the fraud alleged in the indictment. In each loan application, Howard used different names, dates of birth, and social security numbers. She also responded falsely to questions regarding her prior student loan history. Due to the striking similarity between the offense charged and the other acts evidence, the time between the uncharged acts and the charged offense is not too remote.
 
 
 11
 Howard further contends that the evidence of her prior loan applications was unfairly prejudicial because it suggested to the jury that she had spent the last four years of her life supporting herself with fraudulently obtained student loans. Evidence of prior bad acts is admissible if its probative value substantially outweighs the danger of unfair prejudice. Bibo-Rodriguez, 922 F.2d at 1400-1401; see also Fed.R.Evid. 403. We review "the district court's decisions balancing the probative value of evidence against its prejudicial effect for abuse of discretion." United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989) (citation omitted).
 
 
 12
 The Government offered evidence of the receipt of funds obtained through prior fraudulent loan applications to meet its burden of proving that Howard had an intent to commit fraud in obtaining federally insured student loans. The district court concluded that the probative value of this evidence outweighed its prejudicial effect. The district court did not abuse its discretion in admitting evidence of Howard's prior bad acts.
 
 II.
 
 13
 A. Consideration of Acts of Misconduct Set Forth in The Presentence Report.
 
 
 14
 Howard was found guilty of fraudulently obtaining $8,510.00 in student loans from the University of Oregon between December, 1988 and January, 1989. During trial, the Government introduced evidence that in the same fraudulent manner Howard had previously obtained $5,500.00 from Norwich University between January, 1987 and November, 1987, and $6,500.00 frm the University of Nevada between June, 1987 and November, 1987.
 
 
 15
 The probation officer reported that subsequent to obtaining the loan charged in the indictment, Howard received $7,000.00 in 1989 from California State University at Chico, and $3,300.00 from the University of Nevada at Reno in 1991. Howard argues that there was no evidence in the record that the loan from the California State University and the one received in 1991 from the University of Nevada at Reno were fraudulently obtained. We need not decide this question. If we subtract the amount of the loan obtained from California State University at Chico, and the 1991 loan received from the University of Nevada at Reno, the total amount obtained by Howard through her fraudulent representations is $20,510.00.
 
 
 16
 The Sentencing Guidelines require an increase of four points in the base offense level if the total amount of loss exceeds $20,000.00. U.S.S.G. Sec. 2F1.1(b). The $8,510.00.00 obtained from the University of Oregon in 1988 and 1989, the $5,500.00 previous loan to her by Norwich University, and the $6,500.00 received from the University of Nevada in 1987 total $20,510.00. This amount supports the increase in the base offense level of four points mandated by U.S.S.G. Sec. 2.F1.1(b) assessed by the district court. Therefore, the subsequent loans had no impact on the base offense level.
 
 
 17
 B. Relevancy of the Prior Bad Acts.
 
 
 18
 Howard also maintains that her uncharged conduct was not relevant and should not have been included in determining her sentence because the acts were discrete incidents separated by too much time to have been part of the same course of conduct. "Whether conduct extraneous to an offense of conviction is part of the same 'course of conduct' or 'common scheme or plan' as the offense of conviction so as to be considered 'relevant conduct' within the meaning of Guidelines Sec. 1B1.3(a)(2) is reviewed for clear error." United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992) (citation omitted), cert. denied, 114 S.Ct. 394 (1993). The essential components for determining whether an act constitutes relevant conduct under the Guidelines are its "similarity, regularity, and temporal proximity" to the act for which the defendant was convicted. Id. at 910.
 
 
 19
 Howard does not dispute that her uncharged acts were similar to the act for which she was convicted nor that she committed these acts with regularity. Rather, she argues that the acts were too remote temporally from the offense of conviction to have constituted relevant conduct. Application Note 9(B) of Sentencing Guidelines Sec. 1B1.3(a)(2) indicates that the nature of a prior offense is pertinent to a determination whether it is relevant conduct. For example, "a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals." U.S.S.G. Sec. 1B1.3(a)(2), Application Note 9(B).
 
 
 20
 As noted above, Howard's prior acts were strikingly similar to the charged offense. One year prior to receiving $8,510.00 from the University of Oregon, Howard obtained student loans from Norwich University and the University of Nevada, Reno. The record demonstrates that the process of receiving a student loan takes several months. Howard had to be accepted as a student before she could apply for a loan. Given the nature of the offense, the time between the uncharged acts and the offense of conviction is not too remote.
 
 
 21
 United States v. Mullins, 971 F.2d 1138 (4th Cir.1992), does not compel a different conclusion. In Mullins, the Fourth Circuit held that the offense of conviction and a single act of fraud committed six months earlier were not substantially similar to constitute relevant conduct. Id. at 1144-45. In the matter sub judice, the Government made a strong showing of substantial similarity. The district court's finding that the student loans that Howard obtained in 1987 from Norwich University and the University of Nevada, Reno were relevant conduct under Sentencing Guideline Sec. 1B1.3(a)(2) was not clearly erroneous.
 
 
 22
 C. Authority of the Sentencing Commission to Permit Consideration of Uncharged Conduct as Relevant.
 
 
 23
 Howard asserts that "the Guidelines should not be used to treat unconvicted conduct" as relevant for purposes of enhancing a sentence. She contends that "[n]o language of the Sentencing Reform Act of 1984 authorizes the enhanced penalties for unconvicted offenses." Appellant's opening brief at 25. No case authority is cited in support of Howard's limiting interpretation of the Sentencing Commission's authority.
 
 
 24
 We rejected a similar argument in United States v. Wong, 2 F.3d 927, 929 (9th Cir.), cert. denied, 113 S.Ct. 1420 (1993). In Wong, the defendant argued that "[i]f the relevant conduct provisions of the Guidelines permit consideration of the fraud offenses that were charged but dismissed, then the relevant conduct provisions exceed the statutory mandate of the United States Sentencing Guidelines." Id. We ruled that 28 U.S.C. Sec. 994(c)(2) authorizes
 
 
 25
 the Commission to promulgate guidelines that take into account "the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense." The relevant conduct provisions can be seen as an effort to implement that objective. Whatever we may conclude about the wisdom of the Commission in directing courts to impose sentences based on conduct related to, but not part of, the crime of conviction, we cannot conclude that Congress has forbidden the Commission to do so.
 
 
 26
 2 F.2d at 929. We concluded that "section 1B1.3 falls within the broad meaning of the Sentencing Guidelines Statute." Id. Howard's challenge to the Sentencing Commission's statutory authority is without merit.
 
 
 27
 D. Consideration of Prior Bad Acts Not Previously Charged In An Indictment Does Not Violate the Fifth Amendment.
 
 
 28
 Howard maintains that consideration of an uncharged offense that has not yet resulted in a conviction in making a sentencing decision "violates her right to be free from double punishment under the double jeopardy clause of the Fifth Amendment of the United States Constitution." Appellant's Opening Brief at 26. Howard argues that she may be indicted and prosecuted for the fraudulent conduct relied on by the district court in enhancing her sentence.
 
 
 29
 Howard's double jeopardy argument is not ripe for review. She has not demonstrated that she is in danger of being punished twice for the same act. The double jeopardy issue will not arise until she is indicted for conduct that was considered by the district court in calculating her base offense level. See United States v. Saccoccia, 18 F.3d 795, 799 & n. 3 (9th Cir.1994) (declining to address argument that Double Jeopardy Clause barred prosecution for conduct that had formed the basis for punishment imposed in prior prosecution, reasoning that if an increase in offense level is not based on conduct charged in a subsequent indictment, then "the later prosecution is obviously not barred by the Double Jeopardy Clause") (citations omitted); United States v. McCormick, 992 F.2d 437, 438-39 (2d Cir.1993) (subsequent prosecution for conduct previously considered in determining an accused's base offense level violates the Double Jeopardy Clause); United States v. Koonce, 945 F.2d 1145, 1149-50 (10th Cir.1991), cert. denied, 112 S.Ct. 1695 (1992) (same).
 
 
 30
 E. Calculation of Loss Based on Face Value.
 
 
 31
 Howard asserts that the district court erred in using the face value of the loans in calculating the loss for purposes of determining the base offense level. She argues that the district court should have deducted her tuition and living expenses from the face amount. We disagree. Application Note 7(d) to section 2F1.1 provides that "[i]n a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses." U.S.S.G. Sec. 2F1.1, Application Note 7(d) (emphasis added).
 
 
 32
 Howard would not have received student loans had she been truthful about her prior applications and her failure to make payments then due. She was not an intended recipient. She diverted funds away from qualified applicants. The district court did not abuse its discretion by considering the face value of the loans in calculating her base offense level.
 
 III.
 
 33
 Propriety of Denial of New Trial On The Ground That The
 
 Newly Discovered Evidence Was Cumulative
 
 34
 Howard argues that the district court abused its discretion by denying her motion for a new trial. Howard supported her motion by introducing newly discovered evidence that she suffers from a psychiatric disorder that causes her to have multiple personalities. She argues that the district court improperly determined that the newly discovered evidence of her mental condition was cumulative. We review the denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). A court may grant a new trial under Rule 33 of the Federal Rules of Criminal Procedure "if required in the interest of justice." Fed.R.Crim.P. 33.
 
 
 35
 [T]o prevail on a Rule 33 motion for a new trial, the movant must satisfy a five-part test: (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must neither be cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal.
 
 
 36
 United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir.1991) (citation omitted).
 
 
 37
 The district court determined that Howard did not satisfy the five-part test because the newly discovered evidence that Howard suffered from a multi-personality disorder was cumulative. The Government argues that the district court was correct because Dr. Barnhardt's testimony would merely corroborate Howard's description at trial of "her childhood marriages, her life's tragedies, and her perceived need to change names." Appellee's Brief at 26.
 
 
 38
 Evidence is cumulative if it does not present facts additional to those presented at trial. See Kay v. Cessna Aircraft Co., 548 F.2d 1370, 1373 (9th Cir.1977) (evidence was cumulative and not newly discovered because it "did not present additional facts relevant to the trial judge's decision"). No evidence was presented at trial that Howard's conduct was triggered by a mental disorder. She told the jury that she had used several different names because she married several times and took several religious names. She also explained that she set forth conflicting birth dates because she had various documents that contained different dates. She asserted that she was not sure which to use. Howard testified that her failure to list prior loans from other schools was the result of confusion caused by the complexity of the forms and her belief that her loans were not in default. In marked contrast, Dr. Barnhardt is prepared to testify that, in his opinion, Howard used different names, dates of birth, and social security numbers because of a multi-personality mental disorder. It is Dr. Barnhardt's expert opinion that Howard's mental disorder can cause a person not to recall events that occur when she assumes a different personality. Dr. Barnhardt's evaluation of Howard's mental state at the time she applied for her student loans tends to prove that she did not intend to defraud the Government. Evidence that Howard suffers from a multi-personality disorder was not cumulative to any evidence presented at trial. The jury was not aware that Howard suffers from a mental disorder that directly affects her capacity to provide information about her true identity.
 
 
 39
 We believe the district court's erroneous finding that evidence of the impact of Howard's mental disorder on her capacity to form the intent to defraud was cumulative caused the district court to err in its conclusion that this newly discovered evidence would probably not result in an acquittal. We also note that the district court made no finding requiring Dr. Barnhardt's credibility as a witness. We hold that the district court abused its discretion in finding that Dr. Barnhardt's expert opinion testimony was cumulative. Accordingly, we vacate the judgment and sentence, and the order denying the motion for a new trial. We remand for a de novo hearing on Howard's motion for a new trial.
 
 
 40
 VACATED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3