**Jill Raeann HENRY, Plaintiff–Appellant,**

v.

**BRIDGESTONE/FIRESTONE INCORPORATED, an Ohio Corporation, Defendant–Appellee.**

No. 02–3347.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 2003.

Decided April 29, 2003.

Before BAUER, POSNER, and RIPPLE, Circuit Judges.

### ORDER

In 1998, Ms. Henry sustained serious injuries in an automobile accident when a Ford Explorer traveling in the opposite direction hit the dividing wall on the turnpike. After the accident, the owner of the Ford Explorer discovered that the tread of one of its tires had separated. He replaced the faulty tire and disposed of it. In August 2000, the Ford Explorer owner received a recall notice for the faulty tire.

Ms. Henry subsequently brought a products liability action against Bridgestone/Firestone ("Firestone"). This case was removed to federal court and then transferred to the United States District Court for the Southern District of Indiana where cases of this sort had been consolidated under an order of the Judicial Panel on Multidistrict Litigation. The district court granted Firestone's motion for summary judgment. It ruled that Ms. Henry had failed to establish by circumstantial evidence that her injury was caused by the alleged defect. For the reasons set forth in this order, we affirm the judgment of the district court.

### 1.

On July 26, 1998, Ms. Henry was driving on the inside eastbound lane of the Turner Turnpike near Stroud, Oklahoma. At the same time, Daryl Mitchell was driving in his recently-purchased pre-owned Ford Explorer. The Explorer was towing another vehicle on a flatbed trailer on the inside westbound lane of the turnpike. Mitchell testified that he "felt a sudden jerk towards the rear of my vehicle" and then noticed that his trailer had lowered on the left side. R.20, Ex.1 at 7–8. The Explorer jack-knifed "and hit into the center dividing wall on the turnpike. It bent my bumper, busted my taillight out and did some fender damage on the vehicle." *Id.* at 8. Mitchell came to a stop and pulled over to the side of the road. He first examined the other damage, but finally examined the tire: "And the tire wasn't blown out. It wasn't like a blowout. It was just like the tread had separated on the top of the tire." *Id.* at 9. In another deposition, Mitchell stated that, when he felt the initial jerk, his first impression was that it was in fact a blow-out. R.20, Ex.6 at 18.

At this time, Ms. Henry was driving on the opposite side of the turnpike at a speed of 70 to 75 miles per hour. She saw Mitchell's Explorer hit the dividing wall.

The impact caused the car being transported on the flatbed trailer to become temporarily airborne, and, from Ms. Henry's vantage point, the vehicle appeared to be coming over the dividing wall into her lane immediately in front of her car. To avoid a head-on collision, she attempted to change lanes and lost control of her vehicle. As a result of the accident, she received serious injuries, was life-flighted to a hospital and remained unconscious for two days.

Mitchell, unaware that he had caused an accident on the opposite side of the road, changed his tire and later disposed of the faulty one. In August 2000, Mitchell received a recall notice for his Firestone ATX tires. All three of his other tires were of the exact make recalled. The recall notice states:

> The tires in question may sustain tread belt separation, in which the outer steel belt and or tread of the tire separate from and may eventually become totally detached from the rest of the tire.
>
> Tire tread belt separation can lead to a loss of control and a vehicle crash can occur, particularly if the driver engages in significant braking or steering before the vehicle is fully under control.

R.20, Ex.3 at 1. Ms. Henry eventually learned of Mitchell's identity and brought suit against him in June 2000. At Mitchell's deposition on November 17, 2000, Ms. Henry learned of the alleged defect in the tire. She amended her complaint and brought an action against Firestone. Mitchell settled with Ms. Henry and was dismissed from the suit.

Mitchell's Explorer was pre-owned and had been purchased from a dealership two weeks before the accident. At the time of purchase, it had been operated for approximately 60,000 miles. Mr. Mitchell was completely unaware of the history or prior use of the tire. Ms. Henry's counsel explained at oral argument that, in preparing the case, she had asked the car dealership if it knew the age of each of the tires when it sold the Explorer to Mr. Mitchell and that the car dealership had no information concerning the history or age of the tire. However, she also admitted at oral argument that she had failed to ask the dealership for the name of the person from whom it had purchased the car. Consequently, Ms. Henry never ascertained from the original owner the history, upkeep, use and age of the tire.

Firestone moved for summary judgment based in large part on the fact that Ms. Henry had failed to produce the tire. The district court granted Firestone's motion. It held that, although production of the tire was not necessary to her case, Ms. Henry also had failed to establish by circumstantial evidence that the defect caused the injury. The district court held that the supporting affidavits submitted by Ms. Henry were insufficient to survive summary judgment. As to Mitchell's affidavit, in which he explained that he had seen the tire separation at the scene of the accident, the court stated that this observation did "not support the conclusion that the alleged defect was a reasonably certain explanation for the result." R.29 at 6. The court also noted that Ms. Henry had no personal knowledge on this issue and that the affidavit of Ms. Henry's expert witness, Tom Curtis,[1] merely expressed an opinion that plaintiff was not at fault. The affidavit did not offer an opinion "as to what actually caused Plaintiff's injuries." *Id.* The court noted in a footnote that Ms. Henry also did not dispute the other common causes for the tire failure or tread separation. Consequently, the court concluded that Ms. Henry had

1. Tom Curtis testified as an accident reconstruction expert witness.

"failed to provide sufficient evidence from which a reasonable jury could conclude that the alleged tire defect caused Plaintiff's injuries." *Id.* at 7.

**2.**

We review a grant of summary judgment de novo. Summary judgment is "appropriate when, after construing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Harley–Davidson Motor Co. v. PowerSports, Inc.,* 319 F.3d 973, 980 (7th Cir. 2003).

■ Firestone submits that Ms. Henry's failure to produce the tire requires dismissal. The applicable state law, however, does not support that contention. The Supreme Court of Oklahoma has held that, under the law of that state, a plaintiff's failure to produce the allegedly defective product, when that failure is "in no way due to bad faith or responsibility on [the plaintiff's] part" does not require dismissal. *Moor v. Babbitt Prods., Inc.,* 575 P.2d 969, 970 (Okla.1978). Indeed, in *Moor,* the Supreme Court of Oklahoma determined that the trial court had abused its discretion in dismissing a products liability case because the product had not been produced. Accordingly, we must examine the record to determine whether Ms. Henry produced sufficient evidence to survive summary judgment.

■ Under Oklahoma law,

[t]o maintain a cause of action under manufacturers' products liability, the plaintiff must prove [1] the product was the cause of the injury, [2] that the product was defective when it left the control of the manufacturer, and [3] that the defect made the product unreasonably dangerous to an extent beyond

which would be contemplated by the ordinary consumer who purchases it. *Johnson v. Ford Motor Co.,* 45 P.3d 86, 91 n. 12 (Okla.2002). In short, the plaintiff must prove "that *the defect* directly caused his injuries." *Treadway v. Uniroyal Tire Co.,* 766 P.2d 938, 941 (Okla.1988) (emphasis added).

■ The plaintiff may prove causation by circumstantial evidence; however, the "'circumstantial evidence is not sufficient to establish a conclusion where the circumstances are merely consistent with such conclusion, or where the circumstances give equal support to inconsistent conclusions, or are equally consistent with contradictory hypotheses.'" *Downs v. Longfellow Corp.,* 351 P.2d 999, 1005 (Okla. 1960) (quoting 32 C.J.S. Evidence § 1039, p. 1101). The Supreme Court of Oklahoma explained that "where [the plaintiff] relies upon circumstantial evidence to prove causation, the circumstances proved must tend to support plaintiff's theory with reasonable certainty and probability, as opposed to other causal hypotheses," although the plaintiff need not "prov[e] that his injury was not, or could not have been caused by factors other than" the alleged defect. *Id.* In other words, proof of causation "must be based upon probabilities, not possibilities." *Dutsch v. Sea Ray Boats, Inc.,* 845 P.2d 187, 191 (Okla.1992) (internal quotation marks and citations omitted). The Tenth Circuit has stated that Oklahoma law requires the plaintiff to "show that there is a significant probability that the defendant's products caused their injuries." *Blair v. Eagle–Picher Indus., Inc.,* 962 F.2d 1492, 1496 (10th Cir.1992).

The district court held that Ms. Henry's evidence, which was primarily based upon affidavit, was insufficient to survive summary judgment. Under Federal Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on per-

sonal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ Certainly, Ms. Henry's statement of causation in her affidavit[2] was outside her personal knowledge and thus properly not considered. Also, Tom Curtis' affidavit was not helpful in proving causation because he only testified that "the plaintiff did not contribute to causing her vehicle to go out of control and roll over, nor did she contribute to the cause of the injuries that she received." R.20, Ex.7 at 2. Curtis did not state that a defect in the tire caused the accident; he just stated that Ms. Henry's actions did not cause the accident.

■ Similarly, Ms. Henry's tire expert, Morris Dingman, only stated that (1) he thought it more likely than not that the missing tire was of the same make as the other three; (2) that tires of that make had a design fault as acknowledged by a report prepared by Firestone and the recall of the tires; (3) that the defect could cause tread belt separation, which causes loss of stability; and (4) that tire failure on the Ford Explorer caused the accident. See R.21, Ex.5, 1–3. Significantly, Dingman left out the crucial point. He did not assert that the Explorer's tire failure (which neither party disputes happened) was probably caused by the defect in the ATX tires rather than other common causes of tread separation. He did not testify at all concerning the incidence of tire failure caused by either the defect or other common causes or state why it would be more probable, especially here where the history, age, and use of the tire are unknown, for a defect to have caused the

tire failure rather than other common causes.

■ In like manner, the selections from Mitchell's deposition that describe his observation of the separated tread do not indicate to a probability the cause for that separation. As testified to by Firestone's experts, and not contradicted by Ms. Henry, there are multiple causes for why a tire tread would separate not related to the defect existing in some Firestone ATX tires. Many of these common causes for tread separation are related to the history, care and use of the tire. See R.17, Ex.1. Mr. Mitchell, as a two-week owner of the used car, lacked any knowledge of the history and prior use or care of the tire. Moreover, Ms. Henry has failed to bring forth any other evidence concerning the use, age, or history of the tire; counsel for Ms. Henry admitted at oral argument that she had not spoken with the prior owner of the Explorer to determine the tire's history.

Thus Ms. Henry has failed to show, as she was required, that it was a probability that a defect caused the tire failure and thus caused her injuries. Rather, her evidence indicates that an alleged defect was one of many possibilities that would cause tread separation. Therefore summary judgment was appropriate.

**3.**

Although Ms. Henry's inability to produce the tire is not fatal to her claim, her failure to show that the failure of the tire was probably, as opposed to possibly, caused by a manufacturing defect compels our conclusion that the district court was

---

**2.** Ms. Henry stated that the "defect in the Firestone ATX tire was the cause of my inju-

ries." R.20, Ex.2 at 2.

correct to grant summary judgment to Firestone.

AFFIRMED