# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 18, 2011

No. 11-60293
Summary Calendar

Lyle W. Cayce
Clerk

A.K.W., a minor, by and through his mother, Sheri Stewart,

Plaintiff–Appellant

v.

EASTON-BELL SPORTS, INCORPORATED; EASTON SPORTS, INCORPORATED; BELL SPORTS CORPORATION; RIDDELL SPORTS GROUP, INCORPORATED; EASTON-BELL SPORTS, L.L.C.; RIDDELL, INCORPORATED; BELL SPORTS, INCORPORATED; EB SPORTS CORPORATION; ALL AMERICAN SPORTS CORPORATION; RBG HOLDING CORPORATION; UNKNOWN DEFENDANTS X,Y, AND Z,

Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:09-CV-703

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

This case arises out of an injury that the Appellant A.K.W. sustained during a high school football scrimmage. Because we determine that there is sufficient evidence from which a reasonable trier of fact could find for Appellant,

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60293

we REVERSE the district court's grant of summary judgment to Appellees Riddell, Inc. and All American Sports Corporation (collectively, the "Appellees").

## I.  FACTUAL AND PROCEDURAL BACKGROUND

A.K.W. was injured during his ninth grade football team's practice on September 13, 2006.  A.K.W.'s coaches were trying A.K.W. out as a middle linebacker during a scrimmage near the end of that day's practice.  On the final play of that scrimmage, A.K.W. stepped up to tackle the opposing side's quarterback and was aided in that tackle by two of his teammates.  All of the players in on the tackle landed on top of A.K.W.; his head was the first thing to hit the ground.  At the conclusion of practice, A.K.W.'s right eye blurred, he stumbled into a friend, and then collapsed on the football field.  A.K.W.'s coaches removed his helmet, which is now lost.  A.K.W. was taken to the University of South Alabama Medical Center, where he was diagnosed with a carotid artery tear that has since rendered him partially paralyzed.

A.K.W.'s mother filed this suit in Mississippi state court on his behalf against the Appellees and other parent and subsidiary companies of the Appellees (the "Defendants").  The complaint alleged defective design of A.K.W.'s helmet.  Defendants removed the case to federal court.  The district court dismissed A.K.W.'s claims against all of the Defendants except the Appellees and those entities are not party to this appeal.  Appellees moved for summary judgment, which the district court granted.  A.K.W. filed this appeal.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 124 (5th Cir. 2011).  Summary judgment is appropriate where the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a)).  In reviewing the

record, all facts and inferences are construed in the light most favorable to the non-movant. *Id.* However, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Id.* (internal quotation marks omitted).

Where, as here, federal jurisdiction is based on diversity, we apply the substantive law of the forum state. *First Colony Life Ins. Co. v. Sanford,* 555 F.3d 177, 181 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)). In resolving issues of Mississippi law, "we look to the final decisions of that state's highest court" and if there is no decision directly on point, then we must determine how that court, if presented with the issue, would resolve it. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010). In making this determination, decisions from the intermediate state appellate court are useful. *Id.* Beyond Mississippi sources, "'[w]e may consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns.'" *Id.* (quoting *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 483 (5th Cir.2008)).

## III.  DISCUSSION

A.K.W.'s claims arise under the Mississippi Products Liability Act ("MPLA"). Miss. Code Ann. § 11-1-63. The MPLA sets out three elements for a defective design claim: (1) the product was defectively designed, *id.* § 11-1-63(a)(i)(3); (2) the design defect made the product "unreasonably dangerous," *id.* § 11-1-63(a)(ii); (3) the design defect caused the injury, *id.* § 11-1-63(a)(iii). *See also 3M Co. v. Johnson*, 895 So. 2d 151, 161 (Miss. 2005). The Mississippi Supreme Court has said, however, that the fact that a product is unreasonably dangerous is what "[i]n most cases . . . makes the design defective." *Williams v. Bennett*, 921 So. 2d 1269, 1274 (Miss. 2006). Moreover, we have previously stated that the MPLA imposes three conditions to satisfy the "unreasonably dangerous" element: (a) the manufacturer/seller knew, or should have known,

about the dangerous condition, *id.* § 11-1-63(f)(i); (b) the product "failed to function as expected," *id.* § 11-163(f)(ii); and (c) there was a "feasible design alternative," *id. Guy v. Crown Equip. Corp.*, 394 F.3d 320, 324 (5th Cir. 2004); *see also Williams*, 921 So. 2d at 1274. A.K.W. must present evidence of each of these elements to survive summary judgment.

## A.     Design Defect

Appellant claims that the defect in Riddell's helmet design is that Riddell used a discrete liner padding system and traditional foam ("traditional discrete padding"). Appellees contend that Appellant cannot prove defective design because the helmet that A.K.W. wore when he was injured is lost and because there were at least four different types of Riddell helmets in use on the date of A.K.W.'s injury, in addition to helmets by other manufacturers. Appellees point to cases where Mississippi courts have required plaintiffs to show that, at the time of the injury, the product was in substantially the same condition as when it left the defendant's control. *See, e.g.*, *Harris v. Int'l Truck & Engine Corp.*, 912 So. 2d 1101, 1105 (Miss. Ct. App. 2005) (citing *Wolf v. Stanley Works*, 757 So. 2d 316, 319 (Miss. Ct. App. 2000)). Appellant counters by claiming that his expert Dr. Ari Engin, when rendering his opinion, assumed that A.K.W.'s helmet was in perfect condition and that regardless of which model A.K.W. wore, all the Riddell helmets were defective per se upon leaving the manufacturer because of the traditional discrete padding. Therefore, Appellant reasons that since the comparison product for the feasible design alternative is not the exact, individual product involved in the injury, proof as to substantial similarity is unnecessary.

Appellant's argument about the necessity of producing the actual helmet is persuasive. A.K.W. has testified that the helmet he wore had a Riddell sticker on it. Appellees admit that all four models of Riddell helmets used by A.K.W.'s high school had traditional, discrete padding. Appellant's expert Engin opined that a continuous padding system using theromoplastic urethane ("TPU

continuous padding") is "better" at dealing with impacts, like the one sustained by A.K.W.'s helmet and has said that this conclusion applies to all four Riddell models that A.K.W. could have been wearing. Because the opinion is not based on the actual helmet there is no need for Appellant to have produced the actual helmet. To be sure, the Appellees can argue to the jury that the differences between the four models are so significant to undercut Engin's opinion about the per se nature of traditional discrete padding. But where an opinion about defect is based on a perfect condition product that is straight-from-the-manufacturer and that opinion applies to all potential products that could have caused the injury, there seems no basis to erect a bar at the summary judgment phase. *See Bradley v. Cooper Tire & Rubber Co.*, 2005 WL 5989799, at *4–5 (S.D. Miss. Oct. 25, 2005) ("The court is not persuaded that the fact that the accident tire is unavailable for physical examination and inspection (i.e., for visual and tactile examination) will always present an insurmountable impediment to the formation of a reliable expert opinion as to the existence of a defect-particularly a design defect [under the MPLA] . . .") (citing *Henry v. Bridgestone/Firestone*, 63 F. App'x 953, 957 (7th Cir. 2003).

## B.    Unreasonably Dangerous

Though there are three components of the "unreasonably dangerous" element under the MPLA, *Guy*, 394 F.3d at 324, where the product, like the helmet at issue in this case, is designed primarily to prevent injuries, proof as to each of the three components overlaps. Proving the existence of a "feasible design alternative" is proof of failing to perform as expected. *Id.* ("[T]he claimant must provide evidence that the product failed to function as expected by way of producing evidence of a feasible design alternative that could have reasonably prevented the claimant's injury."). The MPLA defines a "feasible design alternative" as "a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability

of the product to users or consumers." Miss. Code Ann. § 11-1-63(f)(ii).   Engin identified TPU continuous padding as a design alternative to the traditional discrete padding used by Riddell.   Engin noted that such a design is used in motorcycle helmets as well as in other manufacturers' football helmets.  The fact that the alternative design offered by Appellant's expert was in use by Riddell's competitors is proof of its feasibility and that Riddell should have known about the dangerous condition.  *See* Restatement (Third) Torts: Products Liability § 2 cmt. d ("Industry practice may also be relevant to whether the omission of an alternative design rendered the product not reasonably safe."); Phillip L. McIntosh, *Tort Reform in Mississippi: An Appraisal of the New Law of Products Liability, Part II*, 17 Miss. C. L. Rev. 277, 282 (1997) ("For example, a new design may create a danger that is not discovered by the manufacturer because . . . the manufacturer failed to keep up with reasonably available technological advances.").   That is to say that TPU continuous padding could have been implemented by Riddell "without impairing the utility, usefulness, practicality or desirability of the product to users or consumers."  Miss. Code Ann. § 11-1-63(f)(ii).     Since the harm-prevention component of the feasible design alternative definition involves some of the same analysis as causation, we turn to that element now.[1]

## C.   Causation

In Mississippi products liability cases, "[t]he plaintiff must introduce evidence . . . that it is more likely than not that the conduct of the defendant was a cause in fact of the result[—a] mere possibility of such causation is not

---

[1] Appellees urge that Appellant cannot prove that Engin's design alternative could have to a "reasonable probability prevented the harm" because Engin failed to test his alternative design.  Engin relied on his expertise in the field and force models of how different padding systems would have distributed the force.  Failure to conduct testing of the alternative design goes to the weight that should be afforded to Engin's opinions but is not fatal to Appellant's prima facie case. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997) ("This is not to say that alternative product designs must always be tested by a plaintiff's expert.").

enough." *Herrington v. Leaf River Forest Prods., Inc.*, 733 So. 2d 774, 777 (Miss. 1999). "[T]he cause in fact of an injury is that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred." *Glover ex. rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007) (internal quotation marks omitted). Engin opines in his report "within a reasonable degree of engineering and bioengineering certainty" that the discrete padding "localized the impact force on the scalp and skull and contributed to the basilar skull fracture," which combined with other forces on A.K.W.'s head "caused dissection injury of the right internal carotid artery at the base of the skull." Appellees point to a part of Engin's deposition where he was pressed about his conclusion that, Appellees argue, undercuts Engin's report.

> Q:   " . . . you're not saying that [A.K.W.] would not have been inured if [A.K.W.'s helmet] had [TPU continous padding] put in place."
>
> A:   " . . . "it's very difficult to make that judgment because I'm a scientist. You know, I don't want to guess here."

We are not persuaded that this brief exchange is enough to undercut Engin's consistent opinion that A.K.W.'s injury would have been prevented or lessened by TPU continuous padding.

## IV.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment to Appellees.

REVERSED.